## HALBERT W. KUNZ ET AL. *v.* GERALD C. WATERMAN AND EDNA WUENSCH WATERMAN.

[No. 671S152. Filed June 2. 1972. Rehearing denied August 25, 1972.]

*Kent S. Arvin, Eugene W. Lausch,* of Indianapolis, for appellants.

*Gil I. Berry, Jr.,* of Indianapolis, for appellees.

DeBRULER, J.—This is an appeal from a judgment of the Marion County Superior Court which reversed a decision of the Metropolitan Board of Zoning Appeals of Marion County, Indiana. The appellees petitioned the Board for a variance to allow them to use their residentially zoned real estate for commercial purposes (*i.e.*, the construction of a gasoline service station.) The Board, after proper notice and hearing, denied the requested variance. The owners of the real estate appealed this denial to the Marion County Superior Court, pursuant to I.C. 1971, 18-7-2-76, being Burns § 53-974, and that court reversed the Zoning Board and ordered the variance granted. The trial court, in ordering the variance granted, found that the Board acted illegally in denying the variance based on the evidence before it, and also injected a constitutional issue by holding:

> "than an ordinance which permanently so restricts the use of property that it cannot be used for any reasonable purpose as presented under the facts of this case goes beyond regulations and constitutes a taking of the property in violation of § 21 and § 23 of Article 1 of the Constitution of the State of Indiana and of the 5th and 4th Amendments to the Constitution of the United States of America."

This appeal is from that decision, and is before this Court on direct appeal because one of the issues involves a question of rights guaranteed by the State and Federal Constitutions. Indiana Code, 1971, 33-3-2-7, being Burns § 4-214; *Metropolitan Board of Zoning Appeals* v. *Gateway Corp.* (1971), 256 Ind. 326, 268 N. E. 2d 736.

The real estate in question lies in a D-S zoning district which limits construction in the area to residential dwellings of a certain size and height, and further specifies a minimum lot size (one acre) and minimum setback for any structure.

It has long been recognized that this kind of restrictive zoning is valid under the police power of the State, so long as it is carried out in a constitutionally authorized manner. *Town of Homecroft* v. *Macbeth* (1958), 238 Ind. 57, 148 N. E. 2d 563; *Euclid, Ohio* v. *Ambler Realty Co.* (1926), 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016. In order to escape restrictions on the use of property which a property owner might find particularly onerous because of his particular situation, the property owner can petition the Metropolitan Board of Zoning Appeals to request a use variance as to his piece of property. In order to successfully petition for such a variance, the property owner must convince the Board that:

"1.  The grant will not be injurious to the public health, safety, morals, and general welfare of the community.

2.  The use or value of the area adjacent to the property included in the variance will not be adversely affected.

3.  The need for the variance arises from some condition peculiar to the property involved and does not exist in similar property in the same zone.

4.  The strict application of the terms of the ordinance will constitute an unusual and unnecessary hardship if applied to the property for which a variance is sought.

5.  The grant of the variance does not interfere with the Metropolitan Comprehensive Plan adopted pursuant to §§ 31 through 37 (§§ 53-931—53-937) of this act: Provided that no zoning ordinance or ordinances classifying or restricting the use of or otherwise applicable to the property involved shall be considered to be a part of such metropolitan comprehensive plan." I.C. 1971, 18-7-2-71, being Burns § 53-969.

Under the statute applicable at the time this petition for variance was filed, the Board could grant the variance only if they made the above determinations, "together with . . . detailed written findings of face [sic] sufficient to support such determinations." Burns § 53-969, *supra.*

The appellees in this case attempted to obtain a substantial use variance from a one acre minimum residential area to a gas station, but failed to convince the Board that all of these requirements were fulfilled, and as a result, the Board denied

the petition for variance. Thereupon the appellees filed a petition in the Superior Court of Marion County alleging that the decision of the Board in denying the variance was illegal in that there was neither substantial nor sufficient evidence to support the finding of said Board in that:

"A. The minimum floor space required by the present use classification would require an expensive dwelling;

B. The area in question presently consists of a Mobil Service Station located on the northeast corner of said intersection; a restaurant located on the west side of said intersection and a Washington Township Fire Station No. 2 being located immediately north of said aforementioned service station;

C. Since the acquisition of the real estate by Plaintiffs in the year 1954, no one has shown the slightest interest to Plaintiffs of acquiring their real estate for a residential plot of land, as said plot of land would be economically undesirable for residential use due to the presence of those set forth in the above paragraph B;

D. The proposed variance of use requested by the Plaintiffs was for the construction of a service station in the southeastern most corner of their plot thereby leaving a substantial portion of said heavily wooded real estate untouched and available for residential use if needed;

E. The western boundary of said real estate abuts on Indiana State Road 421, a major thoroughfare which said thoroughfare is heavily traveled and a major artery of Marion County, Indiana, and which has previously necessitated the erection of an automatic traffic signal at the intersection in question."

Pursuant to the receipt of this writ, the Superior Court ordered the zoning administrator of the Metropolitan Board of Zoning Appeals, Marion County, Indiana, to produce a full and complete transcript of the proceedings before the Board so that the court could make a complete determination of the issues involved. According to I.C. 1971, 18-7-2-80, being Burns § 53-978:

"The return to the writ of certiorari by the Board of Zoning Appeals must concisely set forth such facts and

data as may be pertinent and present material to show the grounds of the decision appealed from."

The Board in this case did produce a complete record of the originals of all papers, pleadings and documents filed with or introduced before it at its meeting on this issue, but did not include their own findings of fact nor the grounds upon which their decision was based. We reaffirm the position here, recently reiterated in *Carlton* v. *Board of Zoning Appeals* (1969), 252 Ind. 56, 245 N. E. 2d 337, that the Board must in all cases set out written findings of fact in support of their decision so that this Court may intelligently review that specific decision without speculating as to the Board's reasoning. Written findings of fact help to maintain the integrity of the Board's decision by insuring that our review is strictly limited to those findings.

However, this lapse was not raised below, and the posture of this case is such that we can review the trial court's findings without remanding this case to the Board for their written determinations. Again, we emphasize that in the future the Board must prepare written findings of fact including their grounds therefor in every case, so that the appellate process in this area may function in an orderly, albeit limited, manner.

The Court's role in reviewing the findings of the zoning board was succinctly and correctly stated by the Appellate Court in *Metropolitan Board of Zoning Appeals* v. *Standard Life Insurance Co.* (1969), 251 N. E. 2d 60, in the following words:

"It must be emphasized that the board, as an administrative body, presumably expert in the land use problems of its particular jurisdiction, has wide discretion in the granting or denying of zoning variances. Pursuant to existing and binding law, in reviewing any such decision a court may not substitute its discretion for that of the board. . . . It also must be emphasized that this case concerns the denial of a variance by the board and that the standards for judicial review in such case are significantly different from

the standards for judicial review of a board decision which *grants* a variance. . . . In order to reverse an order of a board which, as here, *denies* a variance the reviewing court must find that each of the five statutory prerequisites has been established as a matter of law, giving wide construction to the total evidence and resolving all doubts in favor of the board's determination. . . . In other words, the evidence *supporting* each prerequisite must be such that no reasonable man could fail to accept that prerequisite as proved." (Original emphasis.) 251 N. E. 2d at 61.

We have previously adopted this approach in *Metropolitan Board of Zoning Appeals* v. *Gateway Corp., supra,* and *Kessler-Allisonville C.L.* v. *Marion County Board of Zoning Appeals* (1965), 137 Ind. App. 610, 209 N. E. 2d 43.

Applying this test to the case before us, we have no difficulty in reversing the trial court's determination that the variance must be granted. We are unable to say on the record before us that any one of the five determinations required to support the granting of the variance has been unequivocally established as a matter of law, and certainly not all five have been so established.

The petitioners presented evidence to show that the land in question was a four and one-half acre plot at the intersection of two roads. Evidence was received which indicated that there was a service station directly north across the street from the plot and beyond that a small fire station. In addition, there was a restaurant, in a converted home, across the street to the west of the plot, and a stop light at the intersection. The landowner argued to the Board that these facts required the findings that (1) there was no possibility that this proposal would be injurious to the public health, safety, morals and general welfare of the community, (2) the value of adjacent areas would not be affected adversely because such an effect would have already happened because of the presence of the four items listed above, (3) these same four items constituted conditions peculiar to this property as opposed to

other property in the same zone, and (4) the variance would not interfere with the comprehensive plan since two corners were already in commercial use. We cannot say that any of these four conclusions are required in the sense that no reasonable man could fail to accept them as proved. In fact, each of these arguments would apply with equal force to any property near a zoning boundary line. If such arguments were accepted it is difficult to see how any zoning boundary could be maintained.

The appellees further presented evidence that the sale of the property had been hampered by the lack of adequate sewage facilities in the area, and that the commercial developer interested in the area had agreed to build a sewage treatment plant on the premises at a cost of $24,000. However, evidence presented later by the oil company's engineer indicated that the company had decided to tie into a city sewer and had obtained permission to do so from the city. Further, a resident of the area pointed out that most of the homes in the area were adequately served by septic tanks, so that the hardship engendered by the lack of sewage facilities is unclear on the record.

This petition for a variance was met with spirited opposition at the hearing. The remonstrators began by turning over to the Board letters of opposition to the variance from several sources, including the President of Butler University, the President of the Christian Theological Seminary, the Board of Directors of the Indiana Interchurch Center, and the Dean of the Herron School of Art, who effectively summed-up the opposition in the following paragraph:

> "I would point out to you that nearby, in addition to the fine residential area, is St. Maur's Catholic Seminary, Butler University, the Theological Seminary as well as the new Museum of the Herron Art Institute. In view of the fine institutions developing in this area, I feel it would be a distinct disservice to this quarter of the City to permit a variance now applied for."

In addition, the remonstrators presented the Board with petitions opposing the variance signed by over one hundred area residents, and introduced into evidence the Metropolitan Planning Commission's staff report on the proposed variance, which reads as follows:

"The staff *recommends denial* of this petition for the following reasons:

1. The lot proposed for service station development is a large lot in an area of fine homes.

2. The northeast corner of this intersection is devoted to a business use, the northwest corner is a non-conforming restaurant and residential use combination and the southwest corner is residential.

3. South of 51st Street on Northwestern Avenue there are established residential lots as well as vacant property. There is no justification for business use south of 51st Street. An unattractive business string south on Northwestern similar to the hodge podge north of 51st Street cannot be considered good planning for land use or for proper traffic movement.

4. There is no hardship on this property to substantiate a business use. The topography and the area in general from 38th Street to 51st Street is a beautiful area and should not be marred with business uses considered detrimental to future residential stability.

5. The Comprehensive General Land Use Plan proposes residential use for this area."

The attorney for the Metropolitan Planning Commission also testified orally that the variance would substantially interfere with the Comprehensive Plan. The appellees made no attempt to refute this statement. We hold that the Board's denial of this variance was neither illegal nor unconstitutional and thus the order of the trial court granting the variance is reversed.

Arterburn, C. J., Givan and Hunter, JJ., concur; Prentice, J., not participating.

NOTE.—Reported in 283 N. E. 2d 371.