EDITH HAWLEY AND ANGELA D. BERG *v.* SOUTH BEND, INDIANA DEPARTMENT OF REDEVELOPMENT AND SOUTH BEND REDEVELOPMENT COMMISSION

[No. 1278S299. Filed December 21, 1978.]

*Timothy W. Woods*, of South Bend, for appellants.

*G. Terry Cutter, Bowman, Cobb and Cutter*, of Indianapolis, *Edward A. Chapleau*, of South Bend, for appellees.

GIVAN, C.J. — Pursuant to the authority of the Redevelopment of Cities and Towns Act of 1953, IC § 18-7-7-1 *et seq* [Burns 1974], the South Bend Redevelopment Commission declared the downtown section of that city to be a "blighted area". Property within the "Central Downtown Urban Renewal Area" was acquired by the Commission with a view toward redevelopment by private investment. The project was challenged by remonstrators. At the hearing before the Commission, the resolution

was modified and the project confirmed. The remonstrators appealed to the St. Joseph Superior Court where the decision of the Commission was affirmed. This appeal was originally filed with the Court of Appeals. However, it has been transferred to this Court under the provisions of Ind. R. Ap. P. 4(A)(10).

Appellants first contend the trial court committed reversible error in failing to make special findings of fact in support of the order affirming the resolution of the Commission. Ind.R.Tr.P. 52(A) provides that a trial court shall make special findings of fact in any review of actions by an administrative agency. The trial judge in the case at bar filed a 16-page memorandum with his order. This memorandum specifically discusses each and every issue raised by the remonstrators. Without quoting the lengthy decision verbatim, suffice it to say that the order sufficiently discloses the basis and underlying grounds for the decision as well as the specific facts in support thereof. *Farmers State Bank, LaGrange v. Department of Financial Institutions*, (1976) 171 Ind.App. 145, 355 N.E.2d 277.

Appellants next claim the trial court erred in failing to require the Commission to make findings of fact in support of its Resolutions. We first note that IC § 18-7-7-15 [Burns 1974] provides that "[t]he only ground of remonstrance which said court shall have the power or jurisdiction to hear shall be the question whether the proposed project will be of public utility and benefit. . . ." However, this particular clause in the statute has been declared unconstitutional as a restriction on the due process rights to judicial review of administrative actions. *Prunk v. Indianapolis Redevelopment Commission,* (1950) 228 Ind. 579, 93 N.E.2d 171. The trial court was therefore not restricted to the statute in its review.

In *Kunz v. Waterman,* (1972) 258 Ind. 573, 283 N.E.2d 371, this Court reiterated a longstanding rule regarding zoning board findings, which is applicable to all administrative agencies:

"[T]he Board must in all cases set out written findings of fact in support of their decision so that this Court may intelligently review that specific decision without speculating as to the Board's reasoning. Written findings of fact help to maintain the integrity of the

Board's decision by insuring that our review is strictly limited to those findings." 258 Ind. at 577, 283 N.E.2d at 373.

In the case at bar, the Commission made all of the ultimate findings required by IC § 18-7-7-12 [Burns 1974], but failed to make findings of the underlying facts and grounds for the decision. However, in our view, the failure to find such underlying facts and grounds does not require us to reverse the Commission's decision. The purpose of the rule, as we said in *Kunz v. Waterman, supra,* is to facilitate judicial review. Here, the trial court had no problem in reviewing the action of the Commission since the hearing was fully transcribed. We therefore hold that the error of the Commission in not stating the underlying facts and grounds for its decision was harmless in view of the ample record of the hearing.

Appellants next argue that they were denied due process of law and a fair hearing because in adopting the Resolution and finding that the area was blighted, the Commission relied in part on evidence not produced at the hearings. In *Jeffersonville Redevelopment Commission v. City of Jeffersonville,* (1967) 248 Ind. 468, 229 N.E.2d 825, this Court stated:

"An administrative tribunal cannot rely on its own information for support of its findings, and order of tribunal must be based on evidence produced in the hearing at which an opportunity is given to all interested parties to offer evidence and cross-examine witnesses." 248 Ind. at 471, 229 N.E.2d at 827.

While this case places certain duties upon the Commission concerning evidence and the basis of its decision, we see nothing in it or in law and policy to compel the Commission to produce at the hearing every scintilla of evidence having the most remote bearing on the question of blight. So long as there is substantial evidence of probative value in the record to support the findings of blight and so long as the rights to examine evidence, cross-examine witnesses, and offer evidence are afforded to interested persons, this is sufficient to satisfy the requirements of due process.

In the case at bar, the Commission conducted its hearing on three different days, producing *in toto* three sizeable volumes of transcript. At this hearing, appellants were given the full opportunity to cross-examine witnesses, examine the exhibits, and produce evidence of their

own. A study conducted by Real Estate Research Corporation, an economic planning and consulting firm, concluded that the area was blighted and that the proposed shopping mall would be an economic boon to the area. Although the actual survey was not formally placed into the record of the hearing, it was discussed and fully explained at the hearing. Further, there was testimony from a representative of the Chamber of Commerce which also had conducted a survey and had reached substantially the same conclusions. Finally, there was the 1967 official finding of blight in the downtown area. Clearly, this is substantial evidence of probative value and is sufficient to support the Commission's finding.

Appellants, nevertheless, point to the testimony of three of the Redevelopment Commissioners in the trial court. The Commissioners testified that in the past they had discussed the Real Estate Reserach and Chamber of Commerce studies and had also discussed the subject with various persons, including Nicholas Jannotta, the Executive Vice-President of Real Estate Research Corporation. Appellants apparently would have us require the Commission to place in the record the content of every informal off-the-record discussion ever held on the subject. This, we think, would severely hinder the work of an administrative agency, particularly in the case at bar where appellants were fully aware of the Commission's reliance on these studies and had the opportunity to examine them. No error has been shown to us which would require a vacation of the Commission's action.

Appellants next make a series of eight arguments that the trial court erred in finding that the Commission complied with all the conditions precedent in the enabling act. They first contend that no investigation was made to determine if the area sought to be acquired was blighted. Such an investigation is required by IC § 18-7-7-12. In response to this allegation, the trial court held:

"The transcript of the public hearing on Resolution 540 is replete with statements regarding the economic stagnation of the downtown central business district. Real estate officer Mark Brammer submitted a list of twenty-two businesses that have, in recent years, relocated from the four-block area between 11 North Michigan and 300 South Michigan, and he further noted that four others have announced their intentions to relocate. A review sub-

mitted by Nicholas Jannotta of the Real Estate Research Corp. of Chicago, Illinois demonstrates the declining share of the retail dollar going to the central business district. There was testimony of the lack of willing purchasers for property already acquired by the Redevelopment Commission. . . . On the basis of the record of the hearing, and in particular the evidence noted above, the court concludes that there was substantial evidence of a 'lack of development (and a) cessation of growth' which have made the area described as blighted 'under current conditions undesirable for or impossible of normal development and occupancy.' " [Quoting IC § 18-7-7-3.]

The record in the case at bar supports the finding of the trial court.

Second, appellants urge reversal for the failure of the Commission to consider housing for displaced residents, as required by IC § 18-7-7-13. The three Commissioners who testified at the trial stated that consideration was given, albeit the subject was not discussed formally at the hearing or at Commission meetings. The trial court found this testimony, along with Paragraph 4 of the Resolution 540 referring to relocation payments, is sufficient evidence to support the conclusion that displacement was in fact considered by the Commission. Appellants have not sustained their burden to prove to the contrary.

Third, appellants contend the Commission contravened IC § 18-7-7-12 by failing to make an investigation to see if the blight could be corrected by "regulatory processes, or by the ordinary operations of private enterprise." The trial court on this issue considered the evidence previously discussed regarding the finding of blight. In addition to the two professional studies and the testimony of the Department's real estate officer as to the relocation of businesses in the area, there is also testimony in the record that the Commission has offered several properties it has acquired for sale for the purpose of private development, but that it has been able to find very few prospective buyers. Further, as the trial court held, no "correctional regulatory process has been suggested that has not already proven futile." The trial court did not err in finding that the Commission conducted a proper investigation.

Fourth, appellants argue the Commission failed to investigate whether

the project would benefit the public health and welfare, as required by IC § 18-7-7-12. In response, we again cite the 1967 study and determination of blight, the Real Estate Research study, the Chamber of Commerce survey, and voluminous testimony on three days of the hearing. All this evidence was aimed at determining whether the project should proceed. It is all relevant to the question of whether the public health and welfare will be benefitted. It is obvious that the Commission investigated and made the determination that the project would be beneficial to the South Bend community.

Fifth, appellants claim that the Commission failed to prepare maps, plats and lists of the location of acquisition property, the owners of such property, and of the area to be devoted to streets, parks, and other public purposes in the blighted area. It is true that the maps and plats were not formally introduced into the record of the Commission's hearing, but they were in fact prepared. The notice of the hearing recited that such maps and plats had been prepared and were available for inspection in the office of the Department of Redevelopment. Further, the maps and lists were used at the hearing and were introduced at the appeal to the trial court. The trial court did not err in the finding that the Commission had complied with the requirement of IC § 18-7-7-12 that maps, plats, and lists of the project be prepared.

Sixth, appellants contend the Commission's action is invalid since it failed to prepare separate appraisals by at least two independent appraisers of the fair market value of the property to be acquired, as required by IC § 18-7-7-12. Admittedly, only one appraisal was made. However, the trial court, relying on *Allen Co. Dept. of Public Welfare v. Ball Memorial Hospital,* (1969) 253 Ind. 179, 252 N.E.2d 424, held that the provisions of this statute were directory rather than mandatory and that the failure to have a second appraisal at this stage of the project was not absolutely essential. The trial court's interpretation was correct.

In the *Ball Memorial* case, we stated:

"The distinction between directory and mandatory provisions in a statute is that violation of the former is not usually fatal to

the procedure, while a departure from the latter is fatal to any proceeding to obtain the benefit of the statute. In this regard the words 'shall' and 'may' become pertinent. The general rule in this state, and in most other jurisdictions, is that the words 'shall' and 'may' will sometimes be read interchangeably to prevent defeat of the legislative intent. . .

"All laws are mandatory in the sense that a duty of obedience is imposed, but it does not follow that every· slight departure is fatal where the act is merely procedural and does not go to the merits. The basic test, we believe, to determine whether the requirement is essential or not, is to consider the consequences of the failure to follow the statute and, in this regard, other possible interpretations." 253 Ind. at 185, 252 N.E.2d at 427-8.

In the context of the entire Redevelopment Act, the limited purpose of the two appraisals at this juncture in the project development seems to be merely to inform the Commissioners of the likely cost of the project. While the one appraisal may seem less accurate than two, this purpose nevertheless was served.

Furthermore, "the consequences of failing to follow the statute" are of no moment since the purpose of the appraisal was served and since the second appraisal must be made before the project can continue. IC § 18-7-7-16 provides that the price offered to the owners of the property to be acquired shall not exceed the average of the two independent appraisals. Thus, before the next step in the redevelopment process— that of negotiation for the properties and possible eminent domain proceedings—can be taken, the second appraisal must be made. We therefore hold that the statute is directory rather than mandatory, and since there appears no harm to remonstrators by the failure to obtain the second appraisal prior to adoption of the final resolution, we cannot invalidate the Commission's action.

Seventh, appellants claim the Commission failed to set forth in the resolution the general boundaries of the property to be acquired and failed to adopt a plan relative to such boundaries. Resolution 540 describes an area referred to under prior plans as the Central Downtown Urban Renewal Area. The area described appears to be larger than the actual land area that will used by the Redevelopment Commission to develop the proposed shopping mall.

As the trial court pointed out in its memorandum decision, the Redevelopment Act contemplates that the area deemed blighted may be larger than the area sought to be acquired. The statute requires the Commission to prepare maps, plats, and lists which, *inter alia*, indicate "any parcels of property to be excluded from the acquisition. . . ." IC § 18-7-7-12. The Commission is then charged to adopt a resolution which shall state general boundaries of the district "by its location in relation to highways, streets, streams or otherwise as determined by the Commissioners. . . ." IC § 18-7-7-12. Resolution 540 contains a description of the general boundaries of the project area and a general outline for the acquisition and redevelopment of the land. It clearly satisfies the statutory requirements. The fact that the area described is larger than the specific parcels of land required for the shopping mall project is not a fatal flaw. No one, including the remonstrators, has been misled. We therefore hold that the description in Resolution 540 is sufficient to satisfy the statute.

Eighth, appellants claim the Resolution should be set aside for failure to state "the department of redevelopment proposes to acquire all of the land and interests therein within said boundaries [the 'blighted area'] with certain designated exceptions. . . ." IC § 18-7-7-12. The argument is frivolous and without merit. The final page of Resolution 540 states that the Department of Redevelopment "has acquired land and proposes to acquire land and the interests therein within aforementioned boundaries as designated in the Urban Renewal Plan. . . ." The failure to include the precise words of the statute does not change the overall meaning of the resolution. Accordingly, we hold the trial court was correct in finding that the Commission had complied with all the conditions precedent in the Redevelopment Act.

Appellants next claim the trial court erred in permitting the Commission to introduce certain maps and plats at the trial. As we discussed earlier, the maps and plats were used at the Commission's hearing, although they were not formally introduced into the record. For purposes of the remonstrances in the trial court, the maps and plats clearly were admissible. They were essential to the development of the project. Merely because they were not formally in-

troduced at the administrative hearing does not mean they should be excluded from consideration in an appeal to a court of law, particularly when they are of singular importance to the controversy. These plats and maps were prepared for the administrative body for the purpose of carrying out this project. They were a part of the intrinsic record rather than extrinsic evidence that required introduction before consideration by the Commission. We hold the trial court did not err in admitting the maps and plats.

Next, appellants contend the trial court committed reversible error in refusing to allow a particular witness to testify to the amount of money spent in remodeling a building in downtown South Bend. The trial court sustained an objection to such question on the ground of irrelevance. As the court stated at the time, the specific repair cost of one building has no relevance to the overall social and economic blight of the entire area. Nor is it relevant to the issue of correction of the blight by regulatory processes or private enterprise. Had the testimony been related to the overall cost of repairing and remodeling all of the buildings in the blighted area, it might have been relevant. As the proffered testimony now stands, however, the trial court was correct in refusing it.

Finally, appellants maintain that the Redevelopment Commission has acted abritrarily, capriciously and contrary to statute and the Federal and State Constitutions by seeking to acquire land for a private shopping mall pursuant to an agreement with private developers.

"Eminent domain proceedings for seizing private property are powerful instruments of government. Such powers and rights, however, are not unlimited, and the private property owner and citizen has a right constitutionally to defend against subterfuge and bad faith in the seizure of his property, and may show that it is not to be applied to the public purpose and use as alleged. We do not have here a question of the constitutionality of the Redevelopment Act, but rather a question of whether or not a private property owner has a right to raise the issue that a public official or a public body is acting outside its power and scope of authority and is arbitrary and capricious in attempting to seize private property for other than a public purpose, and in fact, for

private use of another private party. It would seem to us that the answer is obvious: that no private citizen can be compelled to submit to the actions of public officials or a board which he claims to be arbitrary and capricious without a right to be heard on that question; otherwise, democratic government ceases and becomes dictatorial." *Derloshon v. City of Fort Wayne,* (1968) 250 Ind. 163, 166-7, 234 N.E.2d 269, 271.

As stated by the Court in *Kessler v. City of Indianapolis,* (1927) 199 Ind. 420, 157 N.E.2d 547, the inquiry of the courts in this regard is not only the use which the City purports to want to make of the property to be acquired, but also of all the surrounding facts and circumstances tending to show what is the actual, principal and real use to be made of the property.

Examining the facts and circumstances of the proposed taking of private property in the case at bar, we are led to conclude that the above rules have not been violated for two reasons. First, the resale of any property in the area by the Redevelopment Commission takes place only after the principal public use and purpose—the slum clearance or elimination of a blighted area—has been accomplished. Hence, the resale can be seen as merely incidental to the main thrust of the Redevelopment Act. *Alanel Corp. v. Indianapolis Redevelopment Comm.,* (1958) 239 Ind. 35, 48, 154 N.E.2d 515, 522.

Second, the resale of the property to private enterprise under conditions in which the property will be developed into a shopping mall open to the public is clearly within the realm of a "public purpose". In enacting the Redevelopment Act, the General Assembly, in its "declaration of public policy," stated that the redevelopment of blighted areas is a "public and governmental function [which] will benefit the health, safety, morals and welfare and will serve to protect and increase property values, [and] that the clearance, replanning and redevelopment of such blighted areas are public uses and purposes for which public money may be spent and private property acquired." IC § 18-7-7-2 [Burns 1974]. So long as the eventual use of the property is related to a discernible public purpose or use, the actions of redevelopment commissions will not be disturbed on the ground of a public taking of private property for a private purpose. In the case at bar, the proposed shopping mall is such a public purpose.

The trial court adequately and correctly disposed of the remonstrations of the appellants. The trial court is in all respects affirmed.

Hunter, Pivarnik and Prentice, JJ. concur.

DeBruler, J. concurs in result.

NOTE—Reported at 383 N.E.2d 333.