Woodrow TALAS, Appellant
(Plaintiff below),

v.

CORRECT PIPING COMPANY, INC.,
Appellee (Defendant below).

No. 381S52.

Supreme Court of Indiana.

Sept. 28, 1981.

Michael R. Morow, Munster, for appellant; Leonard M. Ring & Associates, Chicago, Ill., of counsel.

Samuel J. Furlin, Spangler, Jennings, Spangler & Dougherty, P.C., Merrillville, for appellee.

HUNTER, Justice.

This cause was brought before this Court on the petition of Woodrow Talas, who sought review of the Court of Appeals' opinion found at *Talas v. Correct Piping Co., Inc.*, (1980) Ind.App., 409 N.E.2d 1223. We have previously granted Talas's petition, vacated the opinion of the Court of Appeals, and remanded this cause to the Industrial Board of Indiana with the directive that the Board enter the "specific" findings of fact upon which its decision is based. *Talas v. Correct Piping Co., Inc.*, (1981) Ind., 416 N.E.2d 845.

On remand, the Board has filed a document which it characterizes as "its specific Findings of Fact." We conclude that the statements therein are insufficient to satisfy the letter and purposes of Ind.Code § 22–3–4–7 (Burns 1974) for those same reasons fully discussed and explained in our companion decision today entitled *Perez v. United States Steel Corporation,* Ind., 426 N.E.2d 29 (1981). We again remand the

cause to the Industrial Board for specific findings of fact.

The facts relevant to Talas's claim were previously explained by this Court as follows:

"Mr. Talas was injured in a work-related accident resulting in traumatic quadriplegia. For approximately four months, plaintiff received around-the-clock nursing care at his home which was paid for by his employer's insurance carrier. The payments then stopped, and the continuous care was soon terminated thereafter. Plaintiff then filed an emergency petition with the Industrial Board of Indiana, seeking to have his employer resume paying for the twenty-four hour nursing care. He contended that without the exercise programs administered by the nurses, his joints stiffened, and he lost the feeling in some areas of his body which he had regained through the exercising.

"A hearing was held before a single hearing officer who granted plaintiff's petition, finding him to be '100% totally permanently disabled and in need of further medical care in order to reduce his disability or impairment.' The employer appealed to the full Board which, after a second hearing, reversed the earlier ruling and ordered that plaintiff take nothing." *Talas v. Correct Piping Co., Inc.,* *supra,* at 845–46.

The crucial and ultimate factual issue raised by Talas's petition for emergency care is whether continuing medical treatment in the form of nursing care will serve to "limit or reduce the amount and extent" of Talas's impairment, as per the requirements established by the legislature in Ind. Code § 22–3–3–4 (Burns 1980 Supp.).

The Industrial Board's "Findings of Fact," as submitted on remand, read in relevant part:

"It is further found that the Plaintiff offered into evidence his Exhibit A, the report of Dr. Leo Cooper, dated November 3, 1979; Exhibit B, the report of Dr. Vinod Sahgal, dated September 24, 1979; Exhibit C, the report of Dr. Vinod Sahgal dated November 20, 1979; Exhibit D, notes from the Rehabilitation Institute of Chicago; and Exhibit E, photocopy of bills paid by Plaintiff.

"It is further found that the Defendant offered into evidence its Exhibit 1, Form 12 agreement, approved by the Board April 6, 1979; Exhibit 2, the report of Dr. Vinod Sahgal, dated March 28, 1979; Exhibit 3, a contract from Mobility Systems of Maywood, Illinois, dated January 9, 1979; and Exhibit 4, the report of Dr. Vinod Sahgal, dated December 4, 1978. All exhibits were admitted into evidence.

\* \* \* \* \* \*

"It is further found that Plaintiff suffered his injury on June 25, 1978. He was in the hospital until August 3, 1978. He was then transferred to the Rehabilitation Institute of Chicago, in Chicago, Illinois. He was released on January 19, 1979, but returns occassionally [sic] for check-ups. He received around-the-clock nursing care at his home from January 19, 1979 until June 16, 1979. This care was paid for by Defendant's insurance carrier until May 13, 1979. Plaintiff testified that during the period in which he had continuous nursing care, his physical feelings and motions began to improve, but that now, since he only has an attendant for eight hours a day, his joints are getting stiffer and he is not able to function as well as before.

"It is further found that the Form # 12 agreement approved by the Board determined the length of temporary disability as being June 26, 1978 through December 6, 1978. That said agreement contained the further proviso that:

" 'It is agreed that the injury is in a permanent and quiescent state. It is further agreed that the question of continuing treatment for the employee's injuries, including surgical, hospital and nursing services and supplies, has not been agreed upon, and shall be left to the determination of the Industrial Board upon proper hearing pursuant to the Workmen's Compensation Act of the State of Indiana.'

"It is further found that Plaintiff's own treating physician, by letter, stated that 'Mr. Talas has reach [sic] a permanent and quiescent state.'

\* \* \* \* \* \*

"It is further found that improvement by reducing and limiting the extent of impairment has been determined by a majority of the Full Board not to be possible and that said treatment requested is solely for maintenance.

"It is further found that the Full Industrial Board by a majority of its members overrules the single hearing member's decision on said Emergency Petition and said Petitioner shall take nothing.

"ORDER

"IT IS THEREFORE CONSIDERED, ORDERED AND ADJUDGED by the Full Industrial Board of Indiana that the Single Hearing Member's decision is hereby overruled for the reason that the Petitioner has been determined to be permanent and quiescent and further that said treatment requested is solely for maintenance; therefore, said Single Hearing Member's decision is hereby overruled and Petitioner shall take nothing on his Emergency Petition."

The bulk of the Industrial Board's statements constitute either a summary of the evidence submitted to the Board or a recitation of the medical care received by Talas prior to the date he filed the petition at issue. While these statements lend perspective to our task of judicial review, nothing is revealed therein regarding the rationale and factual basis for the Board's finding of ultimate fact that the medical care sought would neither limit nor reduce Talas's impairment and its conclusion of law that he "take nothing." Consequently, these statements satisfy neither the letter nor purposes of the requirement that the Board enter specific findings of basic fact. *Perez v. United States Steel Corporation, supra; Kunz v. Waterman,* (1972) 258 Ind. 573, 283 N.E.2d 371; *Uhlir v. Ritz,* (1970) 255 Ind. 342, 264 N.E.2d 312; *Yunker v. Porter County Sheriff's Merit Bd.,* (1978) Ind.App.,

382 N.E.2d 977; *Whispering Pines Home for Senior Citizens v. Nicalek,* (1975) Ind. App., 333 N.E.2d 324.

Similarly, the Board's finding that "improvement by reducing and limiting the extent of impairment has been determined by a majority of the Full Board not to be possible" does not satisfy the requirement. It is but an abstract statement of the Board's finding of ultimate fact couched in the statutory terms at issue. *Perez v. United States Steel Corporation, supra; Whispering Pines Home for Senior Citizens v. Nicalek, supra; Rivera v. Simmons Co.,* (1973) 157 Ind.App. 10, 298 N.E.2d 477.

Neither is the Board's statement beneath the caption "Order" that "Petitioner has been determined to be permanent and quiescent" sufficient to satisfy the Board's duty to make specific findings. The question before the Board was not purely the state of Talas's injury, but rather whether continuing medical treatment would "limit" or "reduce" his "impairment," as those terms are employed in the Workmen's Compensation Act. Ind.Code § 22–3–3–4, *supra.* To simply recognize the permanent and quiescent nature of his quadriplegia is to ignore the essence of his claim: whether continuing care would "reduce" or "limit" his "impairment" within the meaning of those statutory terms.

The question may be a difficult one, hinging both on medical testimony and the letter and spirit of the terms contained in Ind.Code § 22–3–3–4, *supra.* That is exactly the reason we are loath to indulge in appellate review of the Board's disposition without specific findings of basic fact, for it is the Industrial Board's expertise and analysis of the evidence which, by statute, must guide and constrain our review. Ind.Code § 22–3–4–8 (Burns 1974). *Perez v. United States Steel Corporation, supra; Kunz v. Waterman, supra; Rivera v. Simmons Co., supra.*

This cause is again remanded to the Full Industrial Board with the directive that it enter the specific findings of basic fact upon which its decision is based. In dis-

charging that task, the Board should be guided by the general precepts laid down today in *Perez v. United States Steel Corporation, supra.* Our consideration of other issues is again postponed pending the Board's further action consistent with this opinion.

The cause is remanded.

GIVAN, C. J., and DeBRULER and PRENTICE, JJ., concur.

PIVARNIK, J., dissents and would deny transfer.