MADISON AREA EDUCATIONAL SPECIAL SERVICES UNIT, Appellant (Petitioner Below),

v.

INDIANA EDUCATION EMPLOYMENT RELATIONS BOARD; Raymond L. Green, as Chairman of the Indiana Education Employment Relations Board; and SSU Federation of Teachers, Appellees (Defendants Below).

No. 4–783A235.

Court of Appeals of Indiana, Fourth District.

Oct. 17, 1985.

Charles R. Rubright, Ronald M. Soskin, Bose, McKinney & Evans, Indianapolis, for appellant.

David W. Gotshall, Clifford & Gotshall, Anderson, for appellees.

YOUNG, Presiding Judge.

Madison Area Educational Special Services Unit (MAESSU) is a legal entity established pursuant to the Interlocal Cooperation Act.[1] Its membership consists of six school corporations and two state hospitals. MAESSU's basic purpose is to provide educational services for children who are handicapped or need special education.

In June of 1981, an employee of MAESSU filed a petition before the Indiana Education Employment Relations Board (IEERB) seeking certification of the SSU-Federation of Teachers as the exclusive representative of a portion of the employees of MAESSU pursuant to the Certified Educational Employee Bargaining Act (CEEBA).[2] On September 3, 1981, James Northway, an agent of the Board, conducted a representation hearing and determined the IEERB had jurisdiction. He also determined a question of representation existed and identified an appropriate bargaining unit.

Northway then ordered a mail ballot election among MAESSU employees. A majority of eligible voters voted for representation by the SSU-Federation.

Responding to MAESSU's objections to the election, the full Board conducted a hearing and concluded:

(1) that this Board has jurisdiction,

(2) the unit is a proper unit, and

(3) the election was properly executed by an agent of this board.

Accordingly, the Board issued a certification of the SSU-Federation as the exclusive representative of the employees of MAESSU in the bargaining unit for purposes of CEEBA.

Shortly thereafter, MAESSU filed a petition before the Jefferson County Circuit Court seeking review of the IEERB's decision. The Ripley Circuit Court, which received the matter upon a change of venue, denied MAESSU's petition for relief. MAESSU now appeals by raising the following issues:

1. Whether the IEERB had jurisdiction over MAESSU to apply the terms of CEEBA;

2. Whether Northway exceeded his authority in ordering an election;

3. Whether Northway erred in opening and counting ballots over MAESSU's objections; and

4. Whether the IEERB erred in failing to make formal findings of fact and conclusions of law.

We affirm the trial court's denial of relief.

The parties agree that MAESSU is subject to the jurisdiction of the IEERB only if it meets the statutory definition of a school corporation. CEEBA provides:

"school corporation" means any local public school corporation established under Indiana law and, in the case of public vocational schools or schools for handicapped children established or maintained by two or more school corporations, shall refer to such schools.

IC 20–7.5–1–2(a).

[1] The description of a "school corporation" as a school "for handicapped children established or maintained by two or more school corporations" is clear and un-

**1.** IND.CODE 18–5–1–1 *et seq.* (current version at IND.CODE 36–1–7–1 *et seq.*).

**2.** IND.CODE 20–7.5–1–1 *et seq.*.

ambiguous. MAESSU easily falls within this definition, as it was established and is maintained by six school corporations.

 A court may not interpret a statute which is unambiguous on its face. *Whitacre v. State* (1980), 274 Ind. 554, 412 N.E.2d 1202; *Ott v. Johnson* (1974), 262 Ind. 548, 319 N.E.2d 622. Where the language of a statute is clear and plain, there is no room for construction and a court has no power to resort to construction for the purpose of limiting or extending its operation. *Dehart v. State* (1984), Ind.App., 471 N.E.2d 312.

 MAESSU asks us to create an ambiguity where none exists and to read into the plain language of the act an additional requirement that the school corporation must be established or maintained *exclusively* by two or more school corporations. This we cannot do. While we do not dispute the rules of statutory construction MAESSU cites, we find them inapplicable in this case given the absence of any ambiguity in the statute.

Furthermore, nothing in logic or policy suggests the construction MAESSU espouses. In enacting CEEBA, our legislature noted:

(a) The citizens of Indiana have a fundamental interest in the development of harmonious and cooperative relationships between school corporations and their certificated employees;

(b) Recognition by school employers of the right of school employees to organize, and acceptance of the principle and procedure of collective bargaining between school employers and school employee organizations, can alleviate various forms of strife and unrest;

(c) The State has a basic obligation to protect the public by attempting to prevent any material interference with the normal public school educational process;

(d) The relationship between school corporation employers and certificated school employees is not comparable to the relation between private employers and employees among others for the following reasons: (i) a public school corporation is not operated for profit but to insure the citizens of the State rights guaranteed them by the Indiana State Constitution; (ii) the obligation to educate children and the methods by which such education is effected will change rapidly with increasing technology, the needs of an advancing civilization and requirements for substantial educational innovation; (iii) the Indiana General Assembly has delegated the discretion to carry out this changing and innovative educational function to the local governing bodies of school corporations, composed of citizens elected or appointed under applicable law, a delegation which these bodies may not and should not bargain away; and (iv) public school corporations have different obligations with respect to certificated school employees under constitutional and statutory requirements than private employers have to their employees.

IC 20–7.5–1–1.

The purpose of CEEBA would be thwarted if special education teachers were removed from the scope of the Act simply because a state hospital is included in their school corporation.

We conclude that MAESSU is a school corporation for purposes of CEEBA and, therefore, subject to the jurisdiction of the IEERB.

MAESSU also claims that Northway exceeded his authority in ordering an election on the question of representation. MAESSU argues that CEEBA, together with the rules and regulations of the IEERB, requires the full Board rather than its agent to direct a representation election.

The proceedings before the IEERB were initiated pursuant to section 10(c) of CEEBA, which provides in part:

(1) A petition may be filed by a school employee organization asserting that twenty percent (20%) of the employees in an appropriate unit (i) wish to be represented for collective bargaining by it as exclusive representative....

....

(4) The board shall investigate such petition, and if it has reasonable cause to believe a question exists as to whether the designated exclusive representative or any school employee organization represents a majority of the school employees in a unit, it shall provide for an appropriate hearing within thirty (30) days. In such hearing the board need not follow the requirements of IC 1971, 4–22–1. If *the board finds, based upon the record of such hearing that such a question of representation exists, it shall direct an election* by secret ballot in a unit it determines to be appropriate. (emphasis added). IC 20–7.5–1–10(c). MAESSU argues that this passage, authorizing "the board" to direct an election, implies that the full three-member Board rather than its agent must act.

CEEBA generally authorizes the Board to act through its employees. IC 20–7.5–1–9(e) provides in pertinent part:

The board shall organize its staff to provide for the functions of unit determination, unfair labor practice processing, conciliation and mediation, fact-finding and research.

IC 20–7.5–1–9(d) provides in part:

To accomplish the objectives and to carry out the duties prescribed in this chapter the board shall have the following powers:

. . . .

(5) To conduct in any part of this state any proceeding, hearing, investigation, inquiry, or election necessary to the performance of its functions. *For any such purpose, the board may designate one (1) of its members, or an agent or agents, as hearing examiners.* The board may utilize such voluntary and uncompensated services as may from time to time be needed;

(emphasis added).

The Board's assumption that the Act's general language authorizes an agent to direct an election is evidenced not only by the Board's ratification of Northway's action in this case, but also by several IEERB rules. Those rules reveal the IEERB's understanding that the term "Board" is used in CEEBA in its generic sense to include the Board's agents. *Compare* IC 20–7.5–1–10(c)(4) *with* Rule 203.5, 560 IAC 1–2–3 (investigating petition) *and* IC 20–7.-5–1–10(c)(4) *with* Rule 102.5, 560 IAC 1–1–1 (conducting hearing).

"It is a well-settled principle of law that 'an agency's interpretation of the statutory scheme it administers is entitled to judicial deference....'" *Ind. State Bd., Etc. v. Keller* (1980), 274 Ind. 123, 409 N.E.2d 583, 587 (quoting *City of Evansville v. Southern Ind. Gas & Elec. Co.* (1976), 167 Ind. App. 472, 496, 339 N.E.2d 562, 578). MAESSU has advanced no valid reason why its interpretation should prevail over that of the administrative agency.

■ MAESSU's remaining argument in support of its construction is unpersuasive. MAESSU cites the general principle that an administrative body may not confer quasi-judicial functions on its employees. MAESSU argues that the determination of a question of representation is such a non-delegable function. The law, however, does not preclude the practical use of assistants as long as an agency does not abdicate its power and responsibility and preserves for itself the right to make the final decision. *National Labor Relations Bd. v. Duval Jewelry Co.* (1958), 357 U.S. 1, 78 S.Ct. 1024, 2 L.Ed.2d 1097. *See generally* 2 Am.Jur.2d Administrative Law § 224.

■ In unit determination proceedings, although an agent of the IEERB may direct an election, a representative is not certified until after the parties have an opportunity to object to the full Board. In this case, the full Board conducted a hearing following the election. Only after this hearing did the three member Board issue a certification of the Federation.

The critical tasks of final unit determination and certification of a representative were performed by the full Board. We are unconvinced that in this situation the tasks

performed by Northway were improperly delegated.

■ MAESSU next claims the Administrative Adjudication Act[3] prohibits a hearing officer from deciding the question of representation and directing the election. First of all, we do not agree that Northway "decided the question of representation," since the full Board issued a certification order only after it reviewed the proceedings.

Furthermore, Section 10(c)(4) of CEEBA provides that in representation hearings, "the board need not follow the requirements of IC 1971, 4–22–1 [the Administrative Adjudication Act]." The general proviso that the "rules and regulations shall be interpreted, if possible, in a manner consistent with ... the Administrative Adjudication Act...."[4] does not negate the specific language of 10(c)(4).

■ Finally, MAESSU charges that the Board did not authorize Northway to act either as hearing officer or agent. MAESSU apparently bases its contention upon the following finding of the trial court:

By a letter dated July 7, 1981, James E. Northway announced to the parties that he was appointing himself as hearing officer. Mr. Northway was, at all times material, an employee of the IEERB.

The statement that Northway "was appointing himself as hearing officer," must be viewed in light of the further finding that Northway was an employee of the IEERB. The letter to which the trial court referred provides:

Your "Unit Determination and/or Representation Petition" has been assigned the above case number for processing.

I will be serving as Hearing Officer in the case and will be contacting the representatives of the parties in the immediate future.

MAESSU has seized upon the trial court's unfortunate phrasing to support its assertion that Northway acted without the Board's authorization. This argument contravenes not only the thrust of the trial court's finding, but also the Board's finding that "the election was properly executed by an agent of the board."

We conclude that Northway, acting as an agent of the IEERB did not exceed his authority in ordering an election on the question of representation.

■ MAESSU next charges Northway with violating the rules and regulations of the IEERB by opening and counting the election ballots despite MAESSU's challenges. MAESSU's argument is based upon Rule 209.5, 560 IAC 1–2–9, which provides in pertinent part:

The Board's agent(s) and authorized observers may challenge, for reasonable cause, the eligibility of persons to participate in the election.

The rules further provide that a ballot so challenged must be placed in a sealed envelope. If the challenged ballots are numerous enough to affect the results of an election, the agent shall investigate and rule on the challenges.

MAESSU challenged each ballot on two grounds: (1) the voter was not a school employee for purposes of jurisdiction of the IEERB and (2) no election had been ordered by the Board. The trial court concluded that Northway did not violate IEERB rules and regulations in rejecting all but one of MAESSU's challenges.

MAESSU's objections to the ballots were essentially the same arguments it had raised prior to the election. On September 3, 1981, Northway held a hearing on the jurisdictional question and upheld the jurisdiction of the IEERB over MAESSU. On October 5, 1981, approximately two weeks before the election, MAESSU filed an exception to the election order, requesting review by the full Board. MAESSU's challenges upon the same grounds previously raised did not require Northway to seal the

---

**3.** IC 4–22–1–1 *et seq.*

**4.** Rule 403, 560 IAC 1–4–3.

election ballots and take yet another look at the same arguments.

Furthermore, the provision in Rule 209.5 allowing for challenges to the eligibility of voters seems an awkward forum for MAESSU's objections to the election as a whole. The rule provides for challenges to "the eligibility of persons to participate in the election." Yet MAESSU did not argue that any voter was not a certificated employee of MAESSU or not on the list of school employees MAESSU submitted to the IEERB. Rather, MAESSU claimed that the election itself should not have been held.

Moreover, the ballot tally was not MAESSU's last opportunity to raise its objections. Following the election, MAESSU filed its objections before the Board, which investigated and rejected them before certifying the Federation. We conclude that Northway did not act improperly in counting the election ballots.

Finally, MAESSU claims the IEERB erred in failing to enter specific findings of fact and conclusions of law. On January 26, 1982, the Board issued the following order:

Comes now the Indiana Education Employment Relations Board and having heard the oral arguments of counsel on the 3rd of December, 1981 and again on the 21st day of January, 1982, and having reviewed the pleadings filed by the parties in this matter does now find that:

1. The IEERB has jurisdiction of the parties and the matters in controversy herein; and

2. The Unit as found by the hearing officer is an appropriate unit; and

3. The hearing officer properly found that a question of representation existed and as agent of this board correctly ordered and held an election.

WHEREFORE, based upon the foregoing findings, the orders of the hearing officer are adopted and approved and it is ordered that the SSU-Federation of Teachers be certified as exclusive representative.

 The parties agree that an administrative agency must make written findings whether or not required to do so by statute. *See Carlton v. Board of Zoning Appeals* (1969), 252 Ind. 56, 245 N.E.2d 337; *State Ex Rel. Newton v. Bd. of Sch. Trustee, Etc.* (1980), Ind.App., 404 N.E.2d 47. Those findings must be sufficient to inform the parties of the evidentiary basis of the decision and to permit adequate review. *Perez v. United States Steel Corp.* (1981), Ind., 426 N.E.2d 29.

 The failure of an agency to make precise findings, however, does not always prevent adequate review. Our supreme court has held that where an agency made ultimate findings but failed to make findings of the underlying facts and grounds for the decision, the error was harmless. *Hawley v. South Bend, Dept. of Development* (1978), 270 Ind. 109, 383 N.E.2d 333. The court reasoned that the purpose of the rule is to facilitate judicial review and that the trial court had no problem in reviewing the action of the Commission since the hearing was fully transcribed. *Id.*

As in *Hawley*, the trial court in this case was able to adequately review the action of the agency. Proper review was ensured because none of the operative facts were in dispute. The jurisdictional issue was not based on disagreement as to the factual composition or function of MAESSU, but rather upon the legal effect of those factors. MAESSU's other arguments essentially challenged the propriety of Northway's undisputed actions, rather than the reality of those actions.

Our supreme court has held, in the context of a petition for post-conviction relief, that conclusory findings do not prevent meaningful review where underlying facts are not in dispute. *Lowe v. State* (1983), Ind., 455 N.E.2d 1126. *See also Salk v. Weinraub* (1979), 271 Ind. 115, 390 N.E.2d 995 (noting the federal exception to the

requirement of findings in cases involving undisputed facts). We find the reasoning of these cases applicable here. To remand for factual findings when there are no factual disputes would be pointless. While the IEERB's findings could have been more precise, they were sufficient to allow adequate review.

Having found no reversible error, we affirm the trial court's denial of MAESSU's petition for relief from the IEERB's decision.

MILLER and CONOVER, JJ., concur.