**NATURAL RESOURCES COMMISSION OF the DEPARTMENT OF NATURAL RESOURCES of the State of Indiana, Appellant (Respondent Below),**

v.

**Robert SULLIVAN, Appellee (Petitioner Below).**

No. 2–280A58.

Court of Appeals of Indiana, Fourth District.

Nov. 30, 1981.

Theodore L. Sendak, Atty. Gen., Steve Zlatos, Deputy Atty. Gen., Indianapolis, for appellant.

Richard O. Regnier, Tipton, for appellee.

MILLER, Presiding Judge.

The Natural Resources Commission (Commission) of the Indiana Department of Natural Resources brings this appeal from a judgment reversing its demotion of Captain Robert Sullivan, an employee of its Law Enforcement Division (Division). Sullivan was employed in the capacity of a Regional Commander from 1974 through February of 1975 and as a Quartermaster from July of 1976 (apparently a lateral transfer) until his demotion one year later.[1] The demotion was effected before Sullivan was afforded a hearing to test the validity of the charges

against him. Sullivan did, however, participate in a later hearing which resulted in the affirmance of his demotion.

Upon his petition for judicial review, the trial court sustained Sullivan's claims that his initial demotion without a hearing violated statutory and due process safeguards, and further that the findings of the later hearing were unsupported by substantial evidence. We find 1) the procedures utilized by the Commission preserved Sullivan's due process rights and 2) Sullivan's demotion was supported by substantial evidence. Accordingly, the trial court's decision is reversed.

### FACTS

On February 4, 1977 the Division's Superintendent, with the Director's approval, filed a statement of charges against Sullivan, pursuant to Ind.Code 14–3–4–7, alleging "frequently repeated acts of incompetence," a major offense under Division rules and regulations.[2] Such acts allegedly included the "(a) inability to properly supervise subordinates or manage his duties while in the capacity of a supervisor; (b) inability to properly carry out assigned duties while in the capacity of a supervisor; (c) inability to make proper reports, as required by the Division, in a complete and satisfactory way or manner while acting in the capacity of supervisor; and (d) failure to display a proper and positive attitude toward the conduct and performance of his duties while acting in the capacity of a supervisor." On the same day, the Superintendent issued Special Order 799 demoting Sullivan in rank and pay from Captain to Class A officer. No hearing was held before Sullivan's demotion.

Within 10 days after his demotion, and pursuant to IC 14–3–4–7, Sullivan requested a public hearing before the Commission. After an unexplained one year delay, Sullivan moved for and was granted a more specific statement of the charges which

---

1. Sullivan was transferred to the Central Office in 1975 for approximately one year. He was not accused of any acts of incompetency while serving in that capacity.

2. The Division's rules and regulations have since been codified in revised form. *See* 310 IAC 1–1–1 *et seq.* (1979).

identified several incidents [3] occurring within a three year period immediately preceding his demotion.[4] An evidentiary hearing was held on July 19, 1978 after which the hearing officer recommended approval of Sullivan's demotion. This recommendation was supported by proposed findings of fact which read, in pertinent part, as follows: [5]

"2) That through the year 1974 and up to February, 1975, when transferred to central office, the respondent as north region commander caused dissention and low morale among the officers of District 4.

3) That the respondent inadequately dealt with the morale problems that he knew existed in District 4 during 1974, and certain actions taken by the respondent exacerbated the existing morale problems in the district.

4) That the respondent as Acting Quartermaster failed to prepare a 'justification memorandum' necessary to explain why 'prior approval' was not obtained for payment of a bill for the repair and winterization of a twenty-eight foot patrol boat as ordered by the Superintendent in December of 1976 and as is proper and customary in the operation of the Quartermaster Section.

5) That when ultimately prepared the 'justification' referred to in paragraph 4 was inadequate in that it did not explain why a S.D.O. or requisition number was not assigned to the transaction.

6) That in November 1976 the respondent sent to central office a receipt for a one hundred dollar payment to Spanky's Navy for reimbursement when in fact the payment to Spanky's Navy had not yet been made. Such procedure is contrary to the established rules pertaining to use and control of the petty cash accounts within the division. The respondent was apprised of the rules and should have and did know that such practice was unacceptable.

7) That the following items were charged and subsequently paid from the petty cash account contrary to rules controlling the use of said accounts:
[herein were listed 10 disbursements totaling $235.79.]

8) That in January 1977 the respondent failed to follow an order issued by the Superintendent directing him to prepare a 'memorandum of justification' as to why 'prior approval' for payment was not obtained, why the bill had not been paid for three and one-half months, and what misunderstanding may have existed between the division and Spanky's Navy with respect to the billing from Spanky's Navy.

. . . .

10) That the respondent did not keep the Superintendent adequately advised on the activity in the Quartermaster Section as the Superintendent requested he do during his tenure as Acting Quartermaster.

11) That the respondent did not move a 22 foot boat located on the ground at the Quartermaster Depot to a location adequate to store said boat properly as the Superintendent ordered, but rather allowed the boat to sit on the ground for several weeks after receiving the order.

12) That from August 1976, until January 1977, the respondent failed to properly supervise and assist Deborah (Western) Cornwall, a secretary at the Quartermaster Depot; . . . .

13) That over the course of his tenure as acting Quartermaster the respondent displayed an inability to properly prepare paperwork, a failure to adequately review the paperwork prepared by his subordinates, and an unwillingness to seek or accept assistance; all of which resulted in

---

3. The specific acts alleged as cause for demotion corresponded to the hearing officer's findings quoted *infra.*

4. Sullivan was a nonprobationary employee with 27 years of service.

5. The omitted proposed findings found insufficient evidence to sustain charges of: 1) failure to operate within the chain of command; 2) submitting inaccurate attendance reports; and 3) making disloyal statements regarding the Division.

his failing to discharge his duties as Acting Quartermaster in a competent manner.

14) That during July, August, and September 1976, the respondent failed to exercise due diligence in following an order of the Superintendent to hire a wage-rate employee at the Quartermaster Depot and instead substituted his own priorities for those reflected in a direct order from the Superintendent.

15) That the respondent refused to confront criticism or attempt to correct inadequacies or discuss existing problems with subordinates or superiors from 1974 through February 1977

16) That the above findings manifest deliberate and gross neglect of duty and repeated acts of incompetence (Section XIII, paragraph 1 (B) General Rules and Regulations of the Law Enforcement Division)."

Sullivan filed objections to the proposed findings, and although he did not object to the manner in which the evidentiary hearing was conducted he did challenge the initial summary demotion by the Superintendent as a denial of an opportunity to answer the charges, confront his accusers, or participate in a hearing to test the validity of the charges. Sullivan contended that such denials violated: 1) IC 14–3–4–7 governing the demotions of Division employees, 2) Division rules and regulations, 3) the Administrative Adjudication Act, Ind.Code 4–22–1–1 et seq., and 4) his due process rights under the Indiana and United States Constitutions. He also contended the proposed findings were unsupported by substantial evidence. On January 26, 1979 the Commission approved and adopted the hearing officer's report and recommendations as its final order.

Sullivan filed a petition for judicial review on February 12, 1979. After argument and pursuant to Sullivan's request, the trial court issued findings of fact and conclusions of law, reversing the Commission's order and directing Sullivan's restoration of rank and back pay. Specifically, the court found:

"No arraignment or for cause hearing was held prior to the demotion of Capt. Sullivan as required by IC 1971, 14–3–4–7, nor did the Superintendent or the Director have any verified evidence or sworn testimony before them on which to prefer said charges, but in fact said charges were based upon hearsay evidence" [6]

and, further:

"all alleged acts of incompetence were proven to be erroneous at the public hearing by the Petitioner and other witnesses and it appears that there was much irrelevant and immaterial testimony permitted in the record over objection of Petitioner's attorney."

The court issued the following Conclusions of Law:

"1. The demotion of Capt. Sullivan by Supt. Murphy on 2/4/77 was arbitrary, capricious and not in accordance with I.C. 1971, 14–3–4–7 (Burns Code Ed.). The legislature in 14–3–4–7, by requiring that an employee of the division not be demoted except for cause after having charges preferred in writing requires a minimum of due process at the earliest stages of an inquiry which may lead to the demotion of an employee of the Law Enforcement Division. That is, there must be a preliminary hearing and a finding of cause for demotion before actual demotion can be ordered. [citing 63 Am.Jur.2d 752 § 202 (1972) and State ex rel. Lehman, (1978) Ind.App., 378 N.E.2d 31 for support] . . . .

2. . . . . [B]ecause the Superintendent or the Director failed to properly find a cause for demoting Capt. Sullivan before actually demoting him on February 4, 1977, as required in 14–3–4–7 such action was without observance of procedure required by law and contrary to Petitioner's constitutional right of due process of law.

3. The record of this case discloses that many of the alleged acts of incompe-

---

**6.** If in fact the Superintendent's charges had been based upon affidavits of third parties it would not have changed the hearsay nature of those charges.

tence with which Capt. Sullivan was [sic] charged were brought to Supt. Murphy as hearsay and were unsupported by competent testimony or other substantial evidence at Petitioner's hearing. As a result the court finds as a matter of law that the final decision of the Natural Resources Commission was not supported by substantial evidence. Section 4–22–1–18 of the Administrative Adjudication Act requires that the determination of the agency must be supported by substantial, reliable and probative evidence. Our Appellate Court discussed this matter at length in the *Lehman* case, supra. In reviewing the character of the testimony of the witnesses for the Respondent at Petitioner's hearing it is this court's opinion that such evidence lacks the substantial and probative quality necessary to meet the requirements of this section."

The Commission filed its motion to correct errors on November 1, 1979 raising the following issues for review:

1) Did the failure of the Superintendent to provide a pre-demotion hearing so taint the demotion proceedings that Sullivan's reinstatement was required?

2) Did the trial court err in finding the Commission's decision was unsupported by substantial evidence?

DECISION

I. *Pre-Demotion Hearing*

■ A trial court's initial review of an administrative decision is limited to a determination of whether the agency's action was:

"1) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; or

2) Contrary to constitutional right, power privilege or immunity; or

3) In excess of statutory jurisdiction, authority or limitations, or short of statutory right; or

4) Without observance of procedure required by law; or

5) Unsupported by substantial evidence."

Ind.Code 4–22–1–18; *accord, e. g., State ex rel. Dept of Natural Resources v. Lehman,* (1978) Ind.App., 378 N.E.2d 31. The *Tipton* Circuit Court concluded the procedure utilized to effect Sullivan's demotion was contrary to Ind.Code 14–3–4–7 and the constitutional right to due process of law. This decision was based on a determination that under the constitution and the applicable statute, Sullivan was entitled to a hearing *before* his demotion. Assuming, *arguendo,* Sullivan was entitled to a pre-demotion hearing we find the subsequent full administrative hearing cured any previous error.

■ In order to avail himself of due process protections in the form of a hearing, Sullivan must first demonstrate the existence of a property interest in his employment status. A property interest sufficient to invoke due process protections is determined by reference to state law and may arise by virtue of a statutory provision. *Perry v. Sindermann,* (1972) 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570; *Town of Speedway v. Harris,* (1976) 169 Ind.App. 100, 346 N.E.2d 646. Thus, where a state statute or administrative regulation provides a state employee with a "legitimate claim of entitlement" to continued employment, due process protections attach. *Town of Speedway v. Harris, supra.*

■ IC 14–3–4–7, the statute at issue in the present case, provides as follows:

"Discharge, demotion or suspension of employee—Hearing—Appeal.—The superintendent, with the approval of the director of the Indiana conservation department [department of natural resources] may discharge, demote or temporarily suspend any employees of the division, *for cause,* after preferring charges in writing. Any such employee who is discharged or demoted shall, upon request, have the right to a public hearing before the Indiana department of conservation [natural resources], if the employee so demands, within ten [10] days of receiving notice of such charges. Such employee may be represented by counsel. The findings of the Indiana department of conservation [natural resources] shall

be final, with the exception that the writ of certiorari or appeal to the appropriate court shall not be denied that individual so affected by the said department's determination. Probationers may be discharged without such charges being made and shall not have a right to a hearing. No officer employee shall be discharged because of political affiliation, nor shall any officer employee be discharged after his probationary period, except as provided in this act." (Emphasis added.)

The statute therefore conditions Sullivan's demotion upon a finding of "cause" and affords him the opportunity to participate in a hearing to test the validity of his demotion. Once this requirement of cause is imposed upon an employment relationship, constitutional due process requires notice and a hearing. *Board of Regents v. Roth*, (1972) 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548; *Town of Speedway v. Harris, supra.*[7]

■ Although the "for cause" requirement imposes procedural due process protections, "cause" specifically relates only to the reason for an employee's demotion. Where an employee's demotion is conditioned upon "cause," the reason for demotion may not be so inadequate that it would be characterized as arbitrary or capricious. *Jeffries v. Turkey Run Consolidated School District*, (7th Cir. 1974) 492 F.2d 1. "For cause" "must relate to and affect the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public." 63 Am.Jur.2d *Public Officers and Employers*, § 202, at 752 (1972). Therefore an employee's eccentric manner or exagerated notion of his own importance, not amounting to illegality of conduct or oppression under color of office, is not sufficient cause for demotion. *Id.*

The "for cause" provision therefore ultimately protects Sullivan from arbitrary action, but the statute does not expressly provide for a hearing before demotion *by the superintendent.* Rather it only express-

ly provides for the right to an administrative hearing before a final administrative determination. Sullivan, however, urges his right to a pre-demotion hearing stems from the Division's regulations or, in the alternative, from the constitutional dimensions of the due process requirement.

We will first examine the administrative regulation (drafted under the authority of IC 14-3-4-1) to which the parties stipulate was in effect at the pertinent times:

"Supervisors in charge of a district or region in the event of a major offense coming to their attention shall:

(a) If the offender is under the primary jurisdiction of the officer-in-charge, prepare a schedule of charges signed by himself and specifically setting forth the allegations and shall submit it through channels to the Superintendent.

(b) If the offender is not under the primary jurisdiction of the officer-in-charge who is aware of the major offense, prepare a letter of information thereon and channel it through his own commanding officer (if he himself is not a commanding officer) to the commanding officer of the offender.

(c) Be themselves subject to charges of gross neglect of duty for failure to act on a major offense as herein described.

(d) *The Superintendent will after receiving a schedule of charges charging an officer with a major offense imemdiately [sic] schedule an arraignment with the defendant and witnesses who are employees of the Division present. The Superintendent and Headquarters staff will inform the defendant of the charges and afford him an opportunity to answer the charges. Evidence may be submitted to substantiate and rebut the charge.*

The Superintendent after hearing all pertinent information may dismiss the charge, discharge, demote or temporarily suspend the employee without pay. Any such employee who is discharged or demoted shall upon request, have the right to a public hearing before the Indiana

---

7. The Department of Natural Resources does not dispute the statute protects Sullivan by providing that he can only be disciplined for cause.

Department of Natural Resources Commission, if the employee so demands, within ten days of receiving notice of such charges. Such employee may be represented by counsel. The findings of the Department of Natural Resources Commission shall be final with the exception that the writ of certiorari or appeal to the appropriate court shall not be denied that individual so affected by the said departments [sic] determination."

Subsection (d) General Rules and Regulations of the Department of Natural Resources, Law Enforcement Division, Section XIII, Paragraph 2. This regulation clearly provides for an "arraignment" type of proceeding before the Superintendent may demote a Division employee. The Commission, however, contends the regulations expressly contemplate utilization of this procedure only where the charges are preferred by a regional or district commander and not by the Superintendent. The Commission therefore concludes an arraignment proceeding is unnecessary where the Superintendent prefers the charges since he has personal knowledge of the evidence supporting the employee's demotion.[8] Sullivan acknowledges the ambiguous nature of this regulatory provision. He nevertheless contends there must be a preliminary hearing or arraignment to support a finding of cause, as required by the statute, and to satisfy constitutional due process.

In support of this contention Sullivan relies primarily on *State ex rel. Dept. of Natural Resources v. Lehman, supra.* Lehman was arraigned before the Superintendent but no evidence was presented to substantiate the charges brought against him by an investigatory commission. At the conclusion of the arraignment the Superintendent issued the following Order:

"The testimony on which the [investigatory commission] based their findings and recommendations was not made available to Superintendent Charles A. Murphy at this arraignment. *No testi-*

*mony was heard which could be used to find Captain Lehman guilty except the charges based on the Commission's findings.* In order to be granted an appeal to the Commission, Captain Lehman must be notified he is ordered demoted." (Emphasis added.)

*Id.* at 34. The Court in *Lehman* concluded the Superintendent had acted in an arbitrary and capricious manner when he effected Lehman's demotion after he had specifically found that no evidence was presented to support the charges levied. As in the present case, however, the employee was afforded a subsequent full administrative hearing before the Commission rendered a final decision supporting his demotion. Although the Court recognized a deficiency in Lehman's arraignment proceedings, *it nevertheless proceeded to examine the evidence adduced at Lehman's full administrative hearing to determine whether substantial evidence supported the charges.* Since the elicited evidence on its face lacked any substantive quality, the *Lehman* Court affirmed the trial court's reversal of Lehman's demotion.

■ The Court's approach in *Lehman* indicates an unwillingness to reverse a demotion based solely on a deficiency, although a substantial one, in the arraignment proceeding, where the employee was afforded a full hearing on the charges levied. Such an approach is fully sustained by the authorities. As a general rule there must be some form of hearing before deprivation of a property interest may occur. The procedural requisites for such a hearing can vary depending on the importance of the interest involved and the nature of later proceedings. *Board of Regents v. Roth, supra.* The procedures therefore preferably include an effective opportunity to rebut charges before demotion but a later full administrative hearing will cure deficiencies in the predemotion proceedings. *Glenn v. Newmann,* (5th Cir. 1980) 614 F.2d 467; *Thompson v. Bass,* (5th Cir. 1980) 616 F.2d

---

8. The current version of this regulation, 310 IAC 1–1–8(I) (1978 edition) specifically provides for an arraignment where the Superintendent prefers charges against officers of the rank of Lieutenant and above.

1259; *Grisell v. Consolidated City of Indianapolis*, (1981) Ind.App., 425 N.E.2d 247.

■ Sullivan does not challenge the manner in which the evidentiary administrative hearing was conducted. We note he was served with notice of the charges, which, at his request, had been made specific. He answered the charges, was represented by counsel, cross-examined witnesses and called witnesses in his behalf. A complete record was made of the proceedings and was submitted for judicial review. Sullivan has not shown, nor does he claim, the alleged deficiency in the arraignment proceeding prejudiced his later defense against the charges. It therefore becomes especially significant to the case before us that due process requires only one full-blown, trial type administrative hearing. *Grisell v. Consolidated City of Indianapolis, supra.* In *Grisell* a city police officer was demoted after a full de novo administrative hearing. Before this proceeding, however, a Board of Captains recommended his demotion at the conclusion of a hearing, conducted pursuant to Ind.Code 18–4–12–27, at which Grisell was denied representation by counsel and a recordation of the proceedings. (The applicable statute did not expressly grant either a right to counsel or recordation.) In that case the Court recognized the possibility of an unfair deprivation resulting from the procedures used at the initial Board of Captains hearing. Nevertheless, Grisell advanced no allegation of prejudice in the later de novo hearing, and the Court's review was limited to the adequacy of the procedures followed at this later hearing. The Court summarized its conclusions as follows:

> "We are of the opinion that since the Merit Board acts independently of the Board of Captains, is not bound by the findings and recommendations determined by the Board of Captains, conducts a hearing de novo where all charges must be proven anew, and reaches the final determination from which review is to be sought, it is the Merit Board action only that is the subject of judicial review. The administrative action here is not

without parallel in other administrative areas. For example, in cases concerning determinations made by the Review Board of the Indiana Employment Security Division, the Court of Appeals reviews the decision of the Review Board without reference to the conclusions of the deputy or referee. *Ervin v. Review Board of Indiana Employment Security Division*, (1977) 173 Ind.App. 592, 364 N.E.2d 1189; *See also, Kuntz v. Review Board of the Indiana Employment Security Division*, (1979) Ind.App., 389 N.E.2d 342. We therefore decline to review the procedures undertaken preliminary to the Merit Board proceeding in the absence of a claim that prejudice occurred in the earlier proceeding that was carried forward to taint the Merit Board hearing.

> Any deficiencies or errors occurring at any preliminary stage, the Board of Captains hearing, or the Chief's actions, are material to the review only to the extent such deficiencies or errors were carried forward into the Merit Board proceedings and prevented Grisell from having a fair, de novo hearing there."

*Id.* at 256–57. In accord with the Court in *Grisell*, we also hold that where an appeal is taken from a full administrative hearing and there is no demonstration that prejudice occurring in an earlier proceeding affected the later hearing, due process rights are adequately safeguarded. Even assuming, *arguendo*, Sullivan was wrongly denied an arraignment proceeding before the Superintendent ordered his demotion, such error was cured by the subsequent administrative hearing.

Furthermore, even assuming the regulations were specifically applicable to a demotion ordered by a superintendent and based upon charges brought by the superintendent, Sullivan's demotion did not result in reversible error:

> It is well established that an administrative agency may not disregard its own regulations *in derogation of statutory and constitutional rights. Coleman v. City of Gary*, (1942) 220 Ind. 446, 44 N.E.2d 101; *Davidson v. Review Board of*

the *Indiana Employment Security Division*, (1974) 160 Ind.App. 221, 311 N.E.2d 472." (Emphasis added.) *Indiana Dept. of Public Welfare v. DeVoux*, (1974) 161 Ind.App. 40, 49, 314 N.E.2d 79. Since we have concluded Sullivan did not have a statutory right to a pre-demotion hearing and that his constitutional right to due process was safeguarded by the procedures utilized by the Commission, the procedures employed in Sullivan's demotion did not result in reversible error.

## II. *The Evidence Supporting Sullivan's Demotion*

■ In determining whether an administrative decision is supported by substantial evidence, the trial court must examine the whole record to determine whether "the agency's decision lacks a reasonably sound basis of evidentiary support. *See Universal Cameral. Corp. v. NLRB*, (1951) 340 U.S. 474 [71 S.Ct. 456, 95 L.Ed. 456]." *L. S. Ayres & Co. v. Indianapolis Power & Light Co.*, (1976) 169 Ind.App. 652, 663–65, 351 N.E.2d 814, 823–24. On appeal, we are therefore required to determine whether reasonable persons would be bound to reach a conclusion different from the Commission's determination on the evidence in the record.

■ With this standard of review in mind we also note administrative decisions must be based on ascertainable standards to insure orderly and consistent action. *Podgor v. Indiana University*, (1978) Ind.App., 381 N.E.2d 1274. These standards should be stated with sufficient precision to provide fair warning of the criteria relevant to an administrative decision. *Id.* However, the standards need only be as specific as the circumstances permit considering the purpose to be accomplished. *Clarkson v. Dept. of Insurance*, (1981) Ind.App., 425 N.E.2d 203.

■ In his argument, Sullivan only briefly intimates the inadequacy of Division regulations to apprise an individual of proscribed conduct. We note that Sullivan was generally charged with "frequently repeated acts of incompetence," conduct

defined as a major offense under division rules and regulations. The majority of courts have upheld statutes employing similar standards as not necessarily unconstitutionally vague. *E. g., Arnett v. Kennedy*, (1974) 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15; *Atkinson v. City of Marion*, (1980) Ind.App., 411 N.E.2d 622. Rather, where such a general standard is not supplemented by explicit enumeration of prohibited acts, it is nevertheless sufficient if the specific acts involved in an individual case clearly fall within the scope of the standard. *Clarkson v. Dept. of Insurance, supra; Atkinson v. City of Marion, supra.* As stated in *Atkinson*: "A defendant whose conduct is *clearly* within the contemplation of a disciplinary statute or rule should not be entitled to escape responsibility for his actions merely because the same provision may be imprecise when applied in different contexts." (Emphasis in original.) *Atkinson v. City of Marion, supra* at 627.

■ In the instant case we believe Sullivan's conduct clearly fell within the realm of proscribed activity. Moreover, the Division's rules and regulations more specifically delineated the responsibilities and duties of both a Regional Commander and a Quartermaster, the positions held by Sullivan at the times pertinent to this case. For example, the regulations mandate compliance with orders given by the Superintendent, require preparation of requisitions and the maintenance of administrative records, and require the maintenance of harmonious relationships by refraining from loss of temper and abusive conduct. Sullivan was charged with the failure to obey certain specified orders by the Superintendent and the failure to properly discharge particular administrative duties. He was also more generally charged with conduct promoting disharmony among those under his command resulting in a severe problem with morale. We believe these charges, if supported by substantial evidence, were of such a nature that any reasonable person in a supervisory capacity would recognize them as possible grounds for demotion. We therefore turn to a representative review of

the evidence supporting several of the charges levied against Captain Sullivan.

## A. Refusal To Obey Superintendent's Order

■ For ease of review, we have consolidated several of the Commission's findings which rest primarily on Sullivan's refusal to obey direct orders from the Superintendent. Sullivan was charged with and found to have failed to prepare justification memoranda as directly ordered by the Superintendent. Specifically, Superintendent Murphy ordered Sullivan on four separate occasions to prepare a memorandum regarding the failure to obtain prior approval for the winterization of a patrol boat and the purchase of a canvas cover. Although such a memorandum was necessary to authorize payment to the merchant involved, Sullivan failed to prepare such a memorandum until after he was ordered to do so for the fourth time by the Superintendent.

On another occasion Sullivan was directed by the Superintendent to move a 22 foot boat located on the grounds at the Quartermaster Depot to an adequate storage location. According to Superintendent Murphy's testimony he repeatedly ordered Sullivan to remove the boat because a reporter from the Indianapolis Star was taking pictures of the area. The boat was nevertheless left on the ground for several weeks and another employee eventually took care of the matter. In the interim, however, a picture was taken of the boat and submitted by the reporter to the Director of the Department, resulting in a poor image regarding the handling of equipment by the Division. Sullivan testified that, in his judgment, his inaction was excusable since at that time a trailer was unavailable and the boat was already in a dilapidated condition. Sullivan nevertheless acknowledged the Superintendent ordered removal of the boat.

## B. Administrative Deficiencies

■ Several of the charges and findings by the Commission are directed generally at Sullivan's inadequacies as an administrator.

Specifically, Sullivan was found to have 1) provided inadequate supervision of the Quartermaster Secretary; 2) charged items to petty cash in violation of Departmental procedures; 3) requested reimbursement for payments that had in fact not been made for equipment; and 4) manifested a general inability to handle rudimentary paperwork.

Specifically, the Quartermaster Secretary testified that the majority of time she was "left on her own" regarding matters in which she had little or no expertise, such as ordering replacement motors for the patrol boats as well as other pieces of equipment. She also testified that Sullivan appeared "lost" when filling out simple paperwork in spite of repeated instructions. The secretary to the Superintendent testified that paperwork submitted by Captain Sullivan consistently fell "below par," requiring more corrections than usually necessary. Sullivan personally testified to knowingly violating established procedures for obtaining reimbursement for payments made to a merchant, Spanky's Navy, an establishment which furnished nautical supplies to the Quartermaster. Specifically Sullivan testified:

"... I wrote one damn too many [checks.] So when I finally got around to tying up my bankbook I hadn't left myself any money to operate Quartermaster on until my checks came back. I don't know when my checks are coming back, it may be three weeks before my checks are coming back, so I hold this check. I should have voided it, but I didn't."

Finally, Sullivan's Quartermaster Secretary also testified that Sullivan directed the splitting of bills and changing of dates so that expenses which were too large to be paid out of the petty cash account could in fact be so paid without prior authorization.

## C. Causing Dissention and Low Morale

■ Numerous witnesses testified to repeated difficulties in dealing with Sullivan as their superior. Specifically, several witnesses testified regarding their reluctance to discuss various problems with Captain

Sullivan for fear of retaliation. On one occasion Sullivan threatened to drown an officer in the lake if further complaints were forthcoming. Sullivan acknowledged he was upset with the officer but could not remember the threat. Additionally the various officers under Sullivan's command who testified related a general reluctance to discuss problems with other officers for fear that Sullivan would be informed of the complaints. Virtually all witnesses agreed that severe morale problems arose in the District during Sullivan's tenure as Commander and that such problems were significantly alleviated upon Sullivan's transfer.

Having found, upon a complete review of the record in this cause, substantial evidence supporting Sullivan's demotion, and having earlier concluded he was not denied due process in his demotion proceedings, we now reverse with instructions to reinstate the Commission's decision.

CONOVER and YOUNG, JJ., concur.