**CITY OF INDIANAPOLIS, and its Agents, and Fred L. Armstrong, City Controller, Appellants-Defendants,**

v.

**Joseph T. TABAK, Appellee-Plaintiff.**

**No. 4-282A46.**

Court of Appeals of Indiana, Fourth District.

Oct. 28, 1982.

---

Charles B. Huppert, Thomas Todd Reynolds, City-County Legal Div., Indianapolis, for appellants-defendants.

Michael J. Siegel, Johnson, Siegel & Coffey, Indianapolis, for appellee-plaintiff.

CONOVER, Judge.

The City of Indianapolis, its agents, and Fred L. Armstrong, City Controller (City) appeal the trial court's granting of a preliminary injunction restraining the suspension of Joseph Tabak's secondhand goods dealer license.

We reverse.

ISSUE

Because we reverse, we need only address one issue:

Did the trial court err when it restrained the suspension of Tabak's secondhand goods dealer license?

FACTS

On December 18, 1981, Tabak was arrested for attempting to receive stolen property, conspiracy to receive stolen property, failure to keep card records for police and unlawful purchases. Upon learning of this, the City Controller revoked Tabak's secondhand goods dealer license on December 30, 1981. Tabak's attorney wrote a letter to the controller on December 31st requesting a hearing on the matter. On January 6, 1982, Tabak's attorney requested the Controller stay the suspension pending review. Apparently there was no response from the Controller.

On January 7, 1982, Tabak filed a complaint in the Marion Superior Court requesting a temporary restraining order against the suspension of the license. It was granted. After a hearing by the court, findings were entered on January 21st, a preliminary injunction granted until a hearing could be held according to the City Ordinance provisions for review on the merits of the suspension. From that decision, this appeal was perfected.

DISCUSSION AND DECISION

It is well settled in Indiana that when reviewing an administrative decision "judicial review shall be limited to a determination of whether the agency possessed jurisdiction over the matter and whether its order was made in accordance with proper legal procedure, was based upon substantial evidence, and did not violate any constitutional, statutory, or legal principle." *Clarkson v. Department of Insurance,* (1981) Ind. App., 425 N.E.2d 203, 206–07. Also, a reviewing court may not overturn the granting of a preliminary injunction unless the trial court abused its discretion. *Grothe v. Herschbach,* (1972) 153 Ind.App. 224, 286 N.E.2d 868. Under these rules, we stand in the position of reviewing a discretionary decision overturning a discretionary decision.

Essentially there are two points in dispute here: first, the trial court's finding the Controller erred in determining the requisite emergency existed which mandated the suspension; second, the trial court's finding it was error for the Controller to suspend the license prior to a hearing. The City claims the trial court erred on both points. We agree.

The Consolidated City of Indianapolis Marion County In., Code § 17–49(b) (1975) provides the Controller may suspend a secondhand goods dealer license without a hearing when the licensee is charged with "an offense involving his fitness to hold a

license and an emergency exists ...."[1] At the hearing held by the trial court, the Controller testified he believed an emergency existed because Tabak was charged with crime, and it was his duty to protect the public from Tabak's illegal activities. The Controller did not abuse his discretion by finding an emergency existed under these facts. His findings and action were authorized by the Code.

The trial court also held it was a deprivation of Tabak's constitutional right to due process not to hold a hearing prior to the suspension of the license. We disagree.

The law of due process is governed by broad guidelines. Generally, the requirements of due process mandate the consideration of two factors. First, there must be the deprivation of a constitutionally protected property or liberty interest. Second, a determination must be made of what process or procedural safeguards are then required. *Logan v. Zimmerman Brush Co.,* (1982) 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265; *Board of Regents v. Roth,* (1972) 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548. It is clear here Tabak had a protected property interest in his license and the City does not argue otherwise. *See*

1. Consolidated City of Indianapolis Marion County In., Code § 17–49 (1975) reads as follows:

(a) Upon learning of a violation of law by a licensee, the controller shall issue a provisional order to the licensee setting forth such violation. The provisional order shall be delivered to the licensee pursuant to the notice provisions of this Code and shall inform the licensee of all of his rights under this Code.

(b) If any licensee, by the conduct of his business or premises, creates a situation or nuisance inimical to the public welfare, or is charged in any court with an offense involving his fitness to hold a license and an emergency exists, the license of the licensee may be temporarily suspended by the controller without a hearing. The order temporarily suspending the license shall be delivered to the licensee pursuant to the notice provisions of this Code and shall inform the licensee of all of his rights under this Code.

(c) The controller shall cause personal service of all notices and orders to be made on the person concerned, either by personal delivery or by registered mail, with return receipt requested. In the absence or disability of a licensee, a copy of the notice shall be affixed to some structure on the premises where it may be readily found or observed by the licensee, or it may be delivered to any agent or employee of the licensee upon the premises or to any adult occupant thereof, and he shall be bound thereby. Depositing any such notice in the United States mail shall constitute service thereof.

(d) Each licensee who is subject to a provisional order or temporary suspension under subsection (b) of this section shall have ten (10) days in which to remedy the reasons causing the provisional order or temporary suspension to be issued. Ten (10) days after notice has been given of a temporary suspension or provisional order, another inspection shall be conducted and the results reported to the controller, who shall either reinstate the license in the case of a temporary suspension, or rescind or modify the provisional order, or revoke the license.

(e) Upon written application of the licensee during the ten-day period, or upon the controller's own motion, a hearing shall be conducted by the controller, during which evidence shall be presented under oath by both the licensee and those inspectors or others knowing the reasons why the license should be revoked. Upon the completion of the hearing, the controller shall reinstate the license, modify the provisional order or reasons for temporary suspension, or revoke the license.

(f) At any time during the ten-day period, the licensee may request in writing a reasonable extension of the time to remedy the reasons for which the provisional order or temporary suspension was issued. The controller may grant or deny the request in his discretion, or he may order a continuance or extension of time on his own motion.

(g) In all cases where the license is revoked or suspended for a period not to exceed ninety (90) days, the decision of the controller shall be reported in writing to the licensee affected and a certified copy of the decision shall be filed in the controller's office within twenty-four (24) hours from the time of the decision. The decision shall become effective upon issuance by the controller.

(h) Once a license has been revoked, it shall not be renewed or reissued, and a new license shall not be issued for any business to be conducted by or for the same licensee on any premises within six (6) months after the revocation if the same licensee is shown to have any financial interest therein or to have any direct or indirect control of the business.

(i) When a license has been revoked or suspended, no refund of any portion of the license fee shall be made to the licensee. (Code 1970, § 7–109; G.O. 80, 1970)

*Barry v. Barchi,* (1979) 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365; *Memphis Light, Gas and Water Division v. Craft,* (1978) 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30; *Mathews v. Eldridge,* (1976) 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18; *Bell v. Burson,* (1971) 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90.

Since there is a protected property interest in issue here, we must next determine what process is required to protect that interest. The three factors to be weighed when determining the process required were established by the United States Supreme Court in *Mathews v. Eldridge,* (1976) 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 335, 96 S.Ct. at 903. *See also Wilson v. Review Board,* (1979) Ind., 385 N.E.2d 438 *cert. denied* 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101; *Berzins v. Review Board,* (1981) Ind.App., 427 N.E.2d 1121; *Sandlin v. Review Board,* (1980) Ind.App., 406 N.E.2d 328.

In some of its recent decisions, the United States Supreme Court has addressed the necessity of a hearing and when it should occur. In *Memphis Light, Gas and Water Division v. Craft,* (1978) 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30, the Court held, "Ordinarily, due process of law requires an opportunity for 'some kind of hearing' prior to the deprivation of a significant property interest." *Id.* at 19, 98 S.Ct. at 1565. Furthermore, in *Parratt v. Taylor,* (1981) 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420, after summarizing several of its decisions which focused on the balancing of private and governmental interests discussed in *Eldridge,* the Court stated:

These cases recognize that either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process can, when cou-

pled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, satisfy the requirements of procedural due process. *Id.* at 539, 101 S.Ct. at 1915 (footnote omitted). Therefore, "the Court's decisions suggest that, absent the necessity of quick action by the State or the impracticality of providing any predeprivation process, a post deprivation hearing here would be constitutionally inadequate." *Logan v. Zimmerman Brush Co.,* (1982) 455 U.S. 422, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265.

In *Barry v. Barchi,* (1979) 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365, the Court emphasized the risk of erroneous deprivation. In that case, a horse trainer's New York license was suspended without a prior hearing when a post-race test revealed the presence of drugs in his horse. The court held a prompt post-suspension hearing was a sufficient protection of due process. The "post termination hearing [was] permitted where the decision to terminate was based on a reliable pre termination finding." *Logan* 102 S.Ct. at 1158 discussing the *Barry* decision.

■ The private and governmental interests at stake in *Barry* are similar to those here. In both cases, the licensee loses an opportunity to make a living and the government is seeking to protect its citizens from illegal activity. The question then becomes whether the probable cause giving rise to the indictments against Tabak is a "reliable pre termination finding" as in *Barry.*

In *Bell v. Burson,* (1971) 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90, the Supreme Court held a driver's license could be suspended under a Georgia law prior to a hearing only when there was a "reasonable possibility" that an accident victim could obtain a judgment against the driver. Other cases have permitted the suspension of a license without a hearing when the licensee previously has been convicted of some offense which is relevant to the licensed activity. *See, e.g., Dixon v. Love,* (1977) 431 U.S. 105, 97 S.Ct. 1723, 52 L.Ed.2d 172. These cases are not clearly determinative of

the present situation, however. Here, Tabak is not being sued in a private action. His alleged actions were criminal in nature. Furthermore, he only has been charged with certain illegal actions—not convicted.

A more analogous situation was presented in *Feinberg v. Federal Deposit Insurance Corp.* (D.D.C.1976) 420 F.Supp. 109. In that case, a bank president was indicted for mail fraud. The F.D.I.C. issued a Notice and Order of Suspension suspending Feinberg from his positions of president and director and prohibiting him from voting his stock in the bank or participating in its affairs. Feinberg requested and was denied a hearing. As to the question of when the hearing must be held, the court stated:

> Balancing the effect of the deprivation upon the individual with the governmental-public interest to be served, it appears that the minimal process constitutionally permissible under the circumstances would be an immediate post-suspension hearing.

*Id.* at 120.

We find these cases persuasive because Tabak's alleged conduct involved "his fitness to hold a license," the Controller "may" suspend the license, and the purpose of the code section is to protect the public. Here, too, a hearing was required to determine whether these charges did involve Tabak's fitness and whether the statutory purpose was satisfied by the suspension.

**2.** See note 1 *supra.*

**3.** Consolidated City of Indianapolis Marion County In., Code § 17–68 (1975) reads as follows:

> (a) Whenever a licensee or applicant for a license wishes to appeal any decision of the controller refusing to issue or renew a license or suspending or revoking a license, he shall first appeal to the board. In order to appeal to the board he shall send a written notice of his interest to appeal to the controller, by registered mail with return receipt requested, or by personal service with a signed receipt. The notice to the controller must be received by him within twenty (20) days of the date of issuance of the decision from which the appeal is being made.
>
> (b) Upon receipt of the notice of appeal served pursuant to subsection (a), the controller shall notify the chairman of the board, who shall schedule a meeting of the board to

Under the Indianapolis Code Tabak had the right to a hearing with the Controller within 10 days of the suspension.[2] Beyond that he had a right to a review of the Controller's decision by the review board, also within 10 days.[3] This is a sufficiently prompt post-suspension hearing to protect his due process rights.

The trial court abused its discretion in granting the preliminary injunction. Judgment is reversed and remanded for further proceedings consistent with this opinion.

YOUNG, P.J., and MILLER, J., concur.

hear the appeal within ten (10) days of the receipt of the notice to appeal.

> (c) All hearings shall be conducted by the chairman of the board in the manner prescribed by the Administrative Adjudication Act. (Indiana Code 4–22–1–1 through 4–22–1–30).
>
> (d) The controller or some person appointed by him shall present evidence at the hearing which supports the controller's decision causing the appeal to be taken.
>
> (e) The decision of the board on an appeal under this section shall be final, and the decision, together with the reasons therefor, shall be delivered in writing to the person taking the appeal and a certified copy shall be delivered to the controller who shall keep all decisions on file in his office. All decisions shall become effective upon delivery to the controller. (Code 1970, § 7–112; G.O. 80, 1970; G.O. 76, 1979, § 1)