Terry HUNT, Appellant (Petitioner Below),

v.

John T. SHETTLE and the Indiana State Police Board, Appellees (Respondents Below),

Danny HIXENBAUGH, Appellant (Petitioner Below)-Cross Appellee,

v.

John T. SHETTLE, and the Indiana State Police Board, Appellees (Respondents Below)-Cross Appellants.

No. 3–482A64.

Court of Appeals of Indiana, Third District.

Aug. 29, 1983.

J. David Keckley, South Bend, for appellants Terry Hunt and Danny Hixenbaugh.

Linley E. Pearson, Atty. Gen., Charles N. Braun II, Deputy Atty. Gen., Indianapolis, for appellees John T. Shettle and the Indiana State Police Bd.

STATON, Judge.

Terry Hunt and Danny Hixenbaugh are Indiana State Police Officers who were disciplined by State Police Superintendent John Shettle and the Indiana State Police Board (Board) for violating department regulations. They sought judicial review of the Board's action in the trial court. In each case, the decision of the Board was affirmed in part and reversed in part. In this consolidated appeal, Hunt, Hixenbaugh,

and the Board all seek relief from the decision of the trial court. We address the following issues:

(1) Whether Shettle's failure to comply with applicable procedural requirements invalidates disciplinary action taken by him;

(2) Whether the findings of the Board are sufficient to enable review of its decision; and

(3) Whether the trial court erred in determining that the disciplinary action taken by the Board was supported by sufficient evidence.

Affirmed in part; reversed and remanded in part.

## HUNT

State Police Superintendent Shettle charged Hunt with violating four different department regulations, all of which related to consuming excessive amounts of liquor and to damaging a State-owned police car. Hunt appeared before Shettle and pleaded not guilty to the charges. Shettle found Hunt guilty of consuming excessive amounts of intoxicating beverages while readily identifiable as a police officer and of committing misuse and waste of public property. It was Shettle's decision that Hunt be suspended for ten days.

Hunt appealed Shettle's decision to the State Police Board. The Board held a hearing at which Hunt was represented by counsel, allowed to present evidence, afforded an opportunity to cross-examine witnesses, and permitted to present opening and closing statements. The Board upheld the decision of Shettle as to the regulations violated by Hunt. However, the Board determined that the ten day suspension ordered by Shettle was excessive and replaced the suspension with a verbal reprimand.

Hunt then sought judicial review of the Board's order in the court below. The trial court affirmed in part and reversed in part

the decision of the Board concluding, *inter alia,* that: (1) The Board's findings were sufficient to allow review of its action; (2) there was substantial evidence in support of the Board's conclusion that Hunt misused public property; and (3) there was no evidence that Hunt was intoxicated while readily identifiable as a police officer. The case was remanded to the Board for reconsideration of the discipline to be imposed. On remand, the Board ordered that Hunt, being guilty only of misuse of public property, should receive a verbal reprimand.

■ Hunt appeals the decision of the trial court, contending that the trial court erred in determining that the Board's findings were adequate and supported by substantial evidence.[1]

■ It is axiomatic that an administrative board is required to set forth findings of fact in support of its decision. *See e.g., Talas v. Correct Piping Company* (1981), Ind., 416 N.E.2d 845; *Hawley v. South Bend, Dept. of Redevelopment* (1978), 270 Ind. 109, 383 N.E.2d 333.

■ The findings made by an administrative agency must include findings of basic fact which support its findings of ultimate fact and conclusion of law. *Rork v. Szabo Foods* (1982), Ind., 436 N.E.2d 64; *Perez v. United States Steel Corp.* (1981), Ind., 426 N.E.2d 29. The findings must be specific enough to enable the reader to understand the reasons which underly the Board's finding of ultimate fact. *Id.,* at 33.

"[A satisfactory statement of findings] is a simple, straightforward statement of what happened. A statement of what the Board finds has happened; not a statement that a witness, or witnesses, testified thus and so. It is stated in sufficient *relevant* detail to make it mentally graphic, i.e., it enables the reader to picture in his mind's eye what happened. And when the reader is a reviewing court

---

1. Hunt also contends that the procedure followed by Shettle was improper. However, as to Hunt, this issue is moot. Any injury suffered by Hunt as a result of procedural errors committed by Shettle was remedied when the Board, after a full hearing, rendered its decision and erased the penalty imposed by Shettle. *See Natural Resources Commission v. Sullivan* (1981), Ind.App., 428 N.E.2d 92, 97.

the statement must contain all the specific facts relevant to the contested issue or issues so that the court may determine whether the Board has resolved those issues in conformity with the law."

*Id.,* quoting from *Whispering Pines Home for Senior Citizens v. Nicalek* (1975), Ind. App., 333 N.E.2d 324, 326 (emphasis original).

In Hunt's case, the Board supported its conclusion that Hunt had consumed excessive amounts of liquor while readily identifiable as a police officer and that Hunt misused and wasted public property with these findings:

"1. That Trooper Terry C. Hunt . . . [was] on October 7, 1977, an active police employee of the Indiana State Police Department.

"2. That Trooper Terry C. Hunt consumed excessive amounts of alcoholic beverages causing him to be in a state of intoxication on October 7, 1977.

"3. That Trooper Terry C. Hunt committed misuse and waste of public property in damaging state owned Commission 4323 on October 7, 1977.

\* \* \* \* \* \*

"6. That the above mentioned actions of Trooper Hunt [was] in violation of the Regulations of the Indiana State Police Department."

■ We agree with Hunt's contention that these findings of fact are insufficient to support the conclusion that he committed misuse and waste of public property. Because these findings are practically devoid of findings of basic fact, we can only speculate as to why the Board found Hunt guilty of misuse of public property.

The record reveals that on the night of October 7, 1977, Hunt's police car was damaged when Hunt momentarily lost control of the car while driving through an "S" curve. There was evidence that Hunt had been drinking beer that evening, but Shettle determined that Hunt was not guilty of two charges which related to driving while intoxicated. There was evidence that Hunt

was exceeding the speed limit, but there was also evidence that Hunt lost control of the car as he was trying to avoid an object in the road. Unfortunately, nowhere in its findings did the Board make any finding regarding the manner in which Hunt was driving or the cause of the accident.

■ The cause of Hunt's accident is an issue of fact. The trial court upheld the Board's determination that Hunt misused the car on the basis that Hunt admitted that he might have been driving too fast. In so doing, the trial court was necessarily engaged in fact-finding. This was error. Issues of fact are to be determined by the Board or agency, not by the reviewing court. *Indiana Ed. Employment v. Board of School Trustees* (1978), 176 Ind.App. 680, 377 N.E.2d 414.

Because the Board failed to make a basic finding as to the cause of Hunt's accident, it is impossible to review the Board's ultimate finding that Hunt was guilty of misuse of public property. Therefore, that portion of the decision of the trial court which affirms the Board's disciplinary action is reversed and remanded to the trial court with instructions to remand this case to the Board for more specific findings of fact.

## HIXENBAUGH

After an appearance before Shettle and a hearing before the Board, Danny Hixenbaugh was found guilty of conveying false information to a fellow officer concerning official department business. The course of events which precipitated Hixenbaugh's appeal to this Court parallels that of Hunt. Shettle found Hixenbaugh guilty of the charge and demoted him in rank from Sergeant to Trooper. Hixenbaugh appealed Shettle's decision to the Board, and the Board upheld Shettle's action. Hixenbaugh then sought judicial review of the Board's order in the court below. The trial court, finding the action of the Board to be supported by substantial evidence, affirmed the Board's order. However, the court also determined that the procedure employed by Shettle was defective, and therefore the demotion was lawful only from the date of the Board's decision. Both the Board and

Hixenbaugh appeal the decision of the trial court. The Board contends that Hixenbaugh's demotion should be effective from the date of Shettle's order because the procedure employed by Shettle was valid. Hixenbaugh contends that the Board's findings were insufficient and that its decision was not supported by substantial evidence.

## I.

### Validity of Shettle's Order

On May 26, 1978, Shettle charged Hixenbaugh with violating a State Police regulation by conveying false information to a fellow officer concerning official department business. On June 6, 1978, Hixenbaugh was given the right, pursuant to Ind.Code 1976 10–1–1–6 (Burns Code Ed., 1981 Repl.),[2] to answer the charge in a personal appearance before Shettle. The "appearance" before Shettle was a proceeding attended by Shettle, Hixenbaugh, and a Captain Furnas. Shettle and Furnas questioned Hixenbaugh about the events which gave rise to the disciplinary charge and Hixenbaugh was given an opportunity to deny the charge and explain his conduct.

**2.** IC 10–1–1–6 reads, in pertinent part:
"The superintendent may discharge, demote or temporarily suspend any employee of the department, for cause, after preferring charges in writing. Such charges may be based on any violation of the laws of the state of Indiana, or any violation of the regulations of the department which have been approved by the board. A copy of such charges shall be personally delivered to the employees so charged by his immediate commanding officer. Any employee so charged shall have a right to answer such charges in a personal appearance before the superintendent and said appearance shall be set by the superintendent not less than five [5] days after the delivery of the copy of the written charges to such employee. Pursuant to such charges and after such personal appearance disciplinary action taken by the superintendent shall be subject to review at a public hearing before the board if such hearing is demanded by the disciplined employee within fifteen [15] days after receiving notice of such disciplinary action. Such notice shall be by certified mail, return receipt requested, and shall be addressed to the employee at his last known place of residence. If any such employee fails to request a hearing before the board within fifteen [15] days after receiving

Hixenbaugh requested that the charge against him be dismissed or, in the alternative, that he be afforded a hearing at which he could confront the evidence and witnesses against him, as well as present evidence himself. In response to that request, Hixenbaugh was told that IC 10–1–1–6 provided for no such hearing and that, if he were found guilty, he had the option to appeal to the Board where he would receive a full hearing. On June 14, 1978, Shettle found Hixenbaugh guilty of the charged violation and demoted Hixenbaugh from Sergeant to Trooper, effective June 17, 1978.

The Board appeals from the trial court's determination that this process was invalid because it failed to comply with the requirements of the Administrative Adjudication Act (AAA). The Board essentially contends that IC 10–1–1–6 does not conflict with the AAA and that Shettle's order is valid. On the other hand, Hixenbaugh contends, and we agree, that the procedure employed by Shettle violated department regulations.

The regulations of the State Police Department which were in effect in 1978 provided, in pertinent part:

notice of disciplinary action, as herein provided, the decision and action of the superintendent shall be final and not subject to review.
"Any employee who requests a hearing before the board as herein provided may be represented by counsel. The attorney general shall appear in all such cases representing the interests of the people of the state of Indiana and the state shall carry the burden of proving any charges giving rise to such hearing. The procedure in all hearings before the board shall be informal and without recourse to the technical common-law rules of evidence required in proceedings in judicial courts. The board shall designate a reporter for said hearing and after all evidence has been introduced the board shall made [sic] an informal finding of facts and a determination based upon said facts.
"The board shall notify the employee of its findings and determination by certified mail, return receipt requested, addressed to the employee at his last known place of residence and any employee aggrieved by such determination may seek judicial review by following the applicable provisions of the administrative adjudication and court review act."

"(H) Hearings shall be conducted on all alleged violations of the Department Regulations. Employees may waive the hearing.

\* \* \* \* \* \*

"(J) (Procedure) Hearings shall:

"(1) Be informal and without recourse to the technical common law rules of evidence required in proceedings in judicial courts. All hearings except those conducted before the Indiana State Police Board are not subject to the provisions as set forth in Administrative Adjudication Act (IC 4–22–1 1971).

"(2) Determine the facts and arrive at a just and effective remedy.

"(3) Be held at reasonable time in relation to the disciplined officer's work schedule. Normally, hearing should be concluded within two (2) hours.

"(4) Be attended by:

"(a) The Employee

"(b) The Commanding Officer filing the letter of Information and/or the Statement of written charges.

"(c) The Employee's Commanding Officer.

"(d) Any other Department Employees requested to do so.

"(e) Any other person with information relevant to the proceedings who will voluntarily appear as requested by either the Commanding Officer or the disciplined Employee.

"(5) Be limited to the facts and allegations set forth in the Statement of Written Charges."

240 IAC 1–2–1 (1979 Ed.).

■ A hearing is a proceeding of relative formality held in order to determine issues of fact or law in which evidence is presented and witnesses are heard. The party responding to the charges made by the agency must be given an opportunity to rebut evidence and cross-examine witnesses. *Whirlpool Corp. v. State Board of Tax Com'rs* (1975), 167 Ind.App. 216, 338 N.E.2d 501, 505. While Shettle did allow Hixenbaugh to appear before him and answer the charges against him, as required by IC 10–

1–1–6, it is clear that Hixenbaugh was demoted by Shettle without the type of hearing required by the State Police regulations. Indeed, when Hixenbaugh requested such a hearing, he was told by Lt. Furnas that none was required by IC 10–1–1–6, and that if he was dissatisfied with Shettle's decision, he could appeal to the Board where he would be afforded such a hearing.

■ An administrative agency may not disregard its own regulations in derogation of the statutory and the constitutional rights of others. *Natural Resources Commission v. Sullivan* (1981), Ind.App., 428 N.E.2d 92, 100. While it is apparent that Shettle failed to afford Hixenbaugh a hearing as required by the State Police regulations, for such failure to constitute error it must also violate a statutory or constitutional right. *Id.* In this instance we find Hixenbaugh's procedural due process rights were violated by the procedure employed by Shettle and the Board.

■ In *City of Indianapolis v. Tabak* (1982), Ind.App., 441 N.E.2d 494, this Court stated:

"The law of due process is governed by broad guidelines. Generally, the requirements of due process mandate the consideration of two factors. First, there must be the deprivation of a constitutionally protected property or liberty interest. Second, a determination must be made of what process or procedural safeguards are then required...."

441 N.E.2d at 496, citing, *Logan v. Zimmerman Brush Co.* (1982), 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265; *Board of Regents v. Roth* (1972), 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548. In this case, Hixenbaugh does have a constitutionally protected property interest at stake because IC 10–1–1–6 provides that officers shall be disciplined "for cause". Once the requirement of cause is imposed upon an employment relationship, due process requirements apply. *Natural Resources Commission v. Sullivan, supra,* at 98. Thus, we must determine what process is due.

■ Ordinarily, due process demands that some kind of hearing be available prior to the deprivation of a property interest. *Memphis Light, Gas and Water Division v. Craft* (1978), 436 U.S. 1, 19, 98 S.Ct. 1554, 1565, 56 L.Ed.2d 30. However, it is not always necessary that a full evidentiary hearing be held at the outset. As this Court noted in *City of Indianapolis v. Tabak, supra,* (quoting from *Parratt v. Taylor* (1981), 451 U.S. 527, 539, 101 S.Ct. 1908, 1914, 68 L.Ed.2d 420):

"[E]ither the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process can, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, satisfy the requirements of procedural due process."

441 N.E.2d at 497.

In the case before us, Hixenbaugh appeared before Shettle to answer the charges against him. Shettle's order demoting Hixenbaugh became effective June 17, 1978. Hixenbaugh timely filed his request for a hearing, but that hearing was not held until August 20, 1979.

In determining whether this process comports with due process, we analogize this case to *Wilson v. Review Board* (1979), 270 Ind. 302, 385 N.E.2d 438, *cert. denied* 444 U.S. 874, 100 S.Ct. 155, 62 L.Ed.2d 101. In *Wilson,* our Supreme Court approved the procedure in which unemployment benefits may be terminated by a deputy on the basis of an interview with the claimant when within 45 days nearly all appeals from the deputy's decision were completed. The court stated:

"[A]ll that is required by the Due Process Clause is a procedural scheme whereby a claimant is afforded a full evidentiary hearing within a *reasonable* time after the termination of benefits...."

*Id.,* 385 N.E.2d at 445 (emphasis added).

We see no reason why this requirement should not apply in the case at bar. Both Hixenbaugh and the claimant in *Wilson* were deprived of a protected property interest after a summary proceeding and required to appeal that decision before receiving a full evidentiary hearing. While the claimant in *Wilson* was afforded a full evidentiary hearing within 36 days of the deputy's order, Hixenbaugh's demotion and corresponding pay cut had been effective for over fourteen months before he was afforded a full evidentiary hearing. A delay of this length does not comply with our Supreme Court's requirement that a full hearing be held within a reasonable time after an initial determination has been made in a summary proceeding.

Shettle violated State Police regulations in derogation of the constitutional rights of Hixenbaugh by failing to hold a hearing before ordering Hixenbaugh's demotion. Therefore, the trial court correctly awarded Hixenbaugh wages lost through the demotion prior to the Board's order.

## II.

### Findings and Substantial Evidence

Hixenbaugh appeals the portion of the trial court's decision which upheld the Board's finding that he was guilty of conveying false information. Hixenbaugh contends that the Board's findings of fact are insufficient and that they are not supported by substantial evidence.

The disciplinary action against Hixenbaugh arises from statements made by him during the department's investigation of Hunt's accident. The focus of that investigation was whether Hunt was under the influence of alcohol when he lost control of his police car. Because Hixenbaugh was among a group of officers who were with Hunt the evening of Hunt's accident, Hixenbaugh was among those officers questioned by the internal affairs investigator. The following is the relevant portion of that interview:

"Q. If you remember, from your observation of TERRY HUNT that evening, do you think he was under the influence of alcohol?

"A. I would say probably he was. Looking at myself, you know. Under

the influence, like you're talking about point one zero. Is that, you're talking about the prima facie state, you know. Are you asking me? In my opinion, if I had to run a test on him, or anybody would he have tested over point one zero? Is that what you're saying?

"Q. Yes.

"A. If that's the case, I'd say probably yes. Although, just taking into consideration, you know, what we had been drinking, probably."

About three months later, Hixenbaugh signed the following affidavit, which became the basis of the disciplinary action:

"Comes now Danny Hixenbaugh, who after first being duly sworn upon his oath, states the following:

"I was with Terry Hunt on the evening of October 7, 1977. We attended a F.O.P. meeting and then stopped at two other places. I was with him from approximately 8:00 p.m. to 12:30 a.m.

"During this period of time beer was consumed by Terry Hunt and my self.

"In my opinion beer consumed was not to any excess. Based upon my observations Terry Hunt was not intoxicated or under the influence of alcohol. The last time I saw him that evening he did not exhibit an impaired condition of thought or action nor did he exhibit a loss of control of his faculties.

/s/ Danny Hixenbaugh
Danny Hixenbaugh"

On the basis of these two statements, the Board found Hixenbaugh guilty of giving false information to a fellow officer concerning official · department business.[3] In support of that conclusion, the Board made the following findings:

"1. That Trooper Danny Hixenbaugh was on or about the 16th day of March, 1978, an active police employee of the Indiana State Police Department.

"2. That Trooper Danny Hixenbaugh on the 16th day of March, 1978, made and signed a sworn affidavit concerning the condition of Trooper Terry Hunt on October 7, 1977.

"3. That Trooper Danny Hixenbaugh had previously given information to Police Investigator II Hensley on January 12, 1978, concerning the same subject matter, but containing a materially conflicting statement as to Trooper Hunt's condition.

"4. That the above mentioned actions by Trooper Danny Hixenbaugh were in violation of the Regulations of the Indiana State Police Department."

 Hixenbaugh first contends that the above findings are insufficient. We agree. There is no finding that Hixenbaugh conveyed "false information." The finding, number "3", merely states that the two statements by Hixenbaugh were "materially conflicting statements" which is not in violation of any regulation. Furthermore, the most fundamental and preliminary finding is absent for the conclusion of fact that Hixenbaugh was guilty of "(c)onveying false information to a fellow officer"—the preliminary finding of intent. Hixenbaugh must have known the information to be false at the time he conveyed the information to a fellow officer or employee. Without *scienter* on the part of Hixenbaugh, there is no violation of the regulation. Obviously, there may be materially conflicting statements without prior knowledge on the part of the officer that one of the statements is false. As pointed out by Judge Garrard, an officer may have received a report that a breathalyzer test showed .01 and reported this to a fellow officer then later learned that the correct

---

**3.** The pertinent regulation reads:

"(K) Offenses by Employees against the authority of the Department shall include, but shall not necessarily be limited to:

\* \* \* \* \* \*

"(11) Conveying false information to a fellow officer or Employee concerning official Department business, or conveying false information to a Commanding Officer when the Employee's conduct has been the subject of a complaint to the Department or is a matter of official concern to the Department."

test score was in fact .10. This is a materially conflicting statement on the part of the officer, but it was not made with any intent to deceive or falsify the report. The information originally received was in error. The original statement made by Hixenbaugh was equivocal and did in some respects conflict with his second statement in the form of an affidavit, but this is not equivalent to "giving false information to a fellow officer" in violation of the regulation. The regulation is designed to punish those officers and employees who have conveyed false information to a fellow officer or employee knowingly with the intent to deceive and mislead. The findings of the Board are insufficient for concluding that Hixenbaugh violated a regulation which prohibited the "(c)onveying of false information to a fellow officer." Therefore, its order must be reversed.

The Board's Order as to Hunt is affirmed in part and reversed and remanded in part for further findings; the Board's Order as to Hixenbaugh is reversed.

GARRARD, J., concurs.

HOFFMAN, P.J., concurs in part and dissents in part with opinion.

HOFFMAN, Presiding Judge, concurring in part and dissenting in part.

Concerning Officer Hunt I agree with the majority that the Board's findings were simply inadequate to permit judicial review. They do not disclose what the Board found that Hunt did which would permit the conclusion that he "committed misuse and waste of public property."

The problem concerning Officer Hixenbaugh is that although he followed proper procedure he did not receive a hearing before the Board for more than fourteen months after Superintendent Shettle demoted him and then another three months elapsed before the Board reached its decision.

Immediate disciplinary action is essential to maintain the integrity of our police force as well as the great trust placed in our police force requires immediate action against an officer who violates that trust. The delay between the action and the proper hearing that he is entitled to was beyond that permissible.

Contrary to the majority, I agree with the trial court that the findings and evidence against Hixenbaugh at the Board hearing, although minimal and not a model form, do sustain the determination that Hixenbaugh gave materially conflicting statements in the Hunt investigation and was therefore guilty of conveying false information to a fellow officer concerning official department business.

Accordingly, I believe the trial court was correct in affirming the Board's determination as of November 26, 1979 and ordering that Hixenbaugh be reimbursed his lost wages for the period from June 17, 1978 to November 26, 1979.

I therefore concur in part and dissent in part.